# THE BAR ASSOCIATION OF BALTIMORE CITY *v.* SIEGEL

[Misc. Docket (Subtitle BV) No. 12, September Term, 1974.]

*Decided July 14, 1975.*

The cause was argued on May 7, 1975, before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ., and reargued on June 5, 1975, before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ., and CHARLES E. ORTH, JR., Chief Judge of the Court of Special Appeals, specially assigned.

Argued and reargued by *Emanuel H. Horn* for respondent.

Argued and reargued by *H. Russell Smouse* for The Bar Association.

DIGGES, J., delivered the opinion of the Court. SINGLEY, LEVINE and ELDRIDGE, JJ., dissent and LEVINE, J., filed a dissenting opinion in which SINGLEY and ELDRIDGE, JJ., concur at page 529 *infra*.

In this disciplinary proceeding it becomes our unpleasant duty to disbar a long-standing member of the bar of this State, Maurice T. Siegel, the respondent, admitted on 12 November 1930 to the practice of law before this Court.

On 5 January 1971, the grand jury in the United States District Court for the District of Maryland returned a three-count felony indictment, each count charging, for the calendar years 1963, 1964 and 1965, respectively, Mr. Siegel with "willfully and knowingly attempt[ing] to evade and defeat a large part of the income tax due and owing," by filing with the Internal Revenue Service a false and fraudulent joint income tax return on behalf of himself and his wife, in violation of 26 U.S.C. § 7201. After communication with the Assistant United States Attorney assigned to prosecute the case, Mr. Siegel appeared in the district court on 14 April 1972, where he proffered a nolo contendere plea to the first count of that three-count indictment. Before acting on this offer Judge James R. Miller, Jr., fully interrogated the accused concerning, among other things, the voluntariness of his plea, his under-

standing of the charges, and his awareness of the consequences. It was only after the judge was completely satisfied with Mr. Siegel's answers to these inquiries, that he accepted the plea to this felony count, although he stated he seldom did this with such a charge. A few months later, on 1 September 1972, Judge Miller imposed a one-year prison sentence, but suspended the serving of all except thirty days of the period (subsequently reduced to twenty-two days), and the Assistant United States Attorney entered a *nolle prosequi* for the remaining two counts of the indictment. There is no contention that the entry of this plea is anything but a final judgment.

As a consequence of this judgment, entered after the acceptance of Mr. Siegel's nolo contendere plea, which judgment for disciplinary purposes is "deemed to be a conviction," Maryland Rule BV4 f 1, The Bar Association of Baltimore City, the petitioner in this proceeding, acting pursuant to Rule BV3 a, filed a "Petition for Disciplinary Action" in this Court, which charged the respondent with "professional misconduct, a crime involving moral turpitude, or conduct prejudicial to the administration of justice," resulting from Siegel's "Willful Evasion of Income Taxes." So that the allegations could be heard and recommendations concerning their disposition be made, we transmitted this petition, as authorized by Rule BV3 b, to a three-judge panel of the Supreme Bench of Baltimore City, consisting of Chief Judge Dulany Foster and Judges Robert B. Watts and Robert L. Karwacki. On 22 November 1974, the respondent, by his answer to the charges, admitted the allegations contained in the petition, conceding among other things that he was convicted of criminal tax fraud by virtue of his nolo contendere plea, but urged, nonetheless, "that he has not been guilty of professional misconduct, of a crime involving moral turpitude, nor conduct prejudicial to the administration of justice." Following a hearing the judicial panel found the charges to be sustained; nevertheless, by memorandum submitted to this Court, on 6 January 1975, it unanimously recommended: "In light of . . . factors proffered in mitigation, we feel that the appropriate

sanction in this case would be suspension from the practice of law for a period of one year." The bar association and Mr. Siegel urge us to adopt the panel's sentiment.

After considering this recommendation from the panel and reviewing the record made at the hearing, both filed in accordance with Rule BV5 b, this Court, on 21 February 1975, ordered the respondent to "show cause on or before the 31st day of March, 1975, why he should not be disbarred . . . ." Mr. Siegel timely responded and asserted that he "should not be disbarred because of the most compelling extenuating circumstances existing in this unusual case." The "circumstances" relied on by the respondent, in our view, fall into one of two categories: (i) events surrounding the institution of the criminal charges and the entry of the nolo contendere plea, and (ii) Mr. Siegel's reputation as a member of the bar of this State.

Before probing the respondent's reasons as to why he should not be disbarred, we reiterate what has been well established by the previous decisions of this Court: "willful tax evasion, proscribed by § 7201, is in that class of felonious crimes which involve moral turpitude and are infested with fraud, deceit, and dishonesty," *Maryland St. Bar Ass'n v. Callanan*, 271 Md. 554, 556, 318 A. 2d 809 (1974); therefore, once a final judgment of conviction has been entered establishing that a member of the bar of this Court is guilty of this offense, that attorney will be disbarred unless he can "demonstrate by clear and convincing evidence a compelling reason to the contrary." *Maryland St. Bar Ass'n v. Agnew*, 271 Md. 543, 551, 318 A. 2d 811 (1974); see *Maryland St. Bar Ass'n v. Callanan, supra; Rheb v. Bar Ass'n of Baltimore*, 186 Md. 200, 46 A. 2d 289 (1946). The rationale for this conclusion has been previously and thoroughly discussed by this Court in the three cases cited above, making it unnecessary for us to re-examine it in this proceeding — especially since the present respondent raises no challenge concerning it. Therefore, the task here is to determine whether Mr. Siegel has offered a "compelling exculpatory explanation" which would justify the imposition of less than

the extreme sanction, *Maryland St. Bar Ass'n v. Agnew,*
*supra* at 550.

(i)

In an attempt to convince this Court that he should not be
disbarred because of "compelling extenuating circum-
stances," citing *Maryland St. Bar Ass'n v. Agnew, supra*
at 553, Mr. Siegel requests that we scrutinize the
various "unusual" occurrences which led up to and in-
fluenced his plea of nolo contendere. He delineates these in
his answer to the show cause order by quoting the following
factors mentioned by the hearing panel in its memorandum
and recommendation: "his prosecution on the indictment
filed against him . . . was recommended against by two
United States Attorneys"; "prosecution was overzealously
pursued"; "his plea of nolo contendere was necessitated by
considerations for his inability [, due to health reasons,] to
undergo an extended trial."

The first circumstance which the respondent proffers is
the fact that two highly respected United States Attorneys,
Stephen H. Sachs and George Beall, recommended to the
appropriate authorities in the United States Department of
Justice that the prosecution of Mr. Siegel under the
three-count indictment be abandoned. By spotlighting the
inclinations of these two reputable former federal
prosecutors the respondent appears to be intimating that the
case against him was so weak that it would have resulted in
his acquittal had he maintained his protestation of
innocence and stood trial. Even if the prosecution had a
weak case, that is not a "compelling extenuating cir-
cumstance" diminishing the degree of culpability inherent
in his guilt. Moreover, on several occasions — before Judge
Miller, before the three-judge panel, and before this Court —
either the respondent or his counsel consistently agreed that
the evidence available to the prosecutor for presentation at
trial was at least sufficient to create a jury question. As
Judge Miller said before he accepted the nolo contendere
plea:

> "The court is satisfied that the plea of nolo

contendere to count one is entered by the defendant, Maurice T. Siegel, freely and voluntarily with full knowledge of the possible consequences thereof; . . . and that there is a basis for the charge that would, in the evidence that would be presented, at least, at the very least, present a jury question; and, that there is a reasonable possibility that a finding of guilt could be made by the jury in the event that count one went to trial on the plea of not guilty."

In addition, if by focusing on the fact that two United States Attorneys for the District of Maryland recommended that the criminal charges against him be dropped, the respondent is urging that we consider their judgment rather than the assessment of their superiors in the Justice Department, he is asking us to ignore the chain of command within the federal prosecutorial system — something, absent a significant reason, we are reluctant to do.

The respondent next insists that the impetus behind the bringing of the charges against him in the tax fraud case was generated by the animosities of certain federal law enforcement officials who attempted, but failed, to have him convicted in another criminal matter relating to the operation of an illegal lottery, see *State v. Siegel*, 266 Md. 256, 292 A. 2d 86 (1972). Beside the fact that this allegation is unsubstantiated by the respondent, we answer this suggestion by pointing out that impugning the motives of those who press charges does not erase the crime's occurrence or diminish the criminality of one's participation in it, if in fact it was perpetrated by the accused. In any event, the way to counteract the type of overreaching by government agents alleged here is to destroy their credibility at trial, before judge or jury, not by confessing to having committed the criminal act and complaining afterward that those who instigated the bringing of the charges were inspired by impure motives.

Thirdly, Mr. Siegel urges that his nolo contendere plea was largely, if not exclusively, the result of his extremely

poor health — two massive heart attacks — which he suffered after he was indicted for tax fraud. We responded to this same contention when it was made under like circumstances in *Maryland St. Bar Ass'n v. Callanan, supra* at 557, where we decided that while the "health problem is distressing . . . we conclude that since [it] . . . developed or occurred *subsequent* to his criminal activity . . . [this coronary malady does] not serve to palliate the evil of his offense."

But aside from these flaws in the respondent's arguments, which have already been individually examined, there is, more importantly, an overriding reason as to why the factors which Mr. Siegel contends justify a lesser sanction than disbarment cannot even be considered within the category of "compelling extenuating circumstances." Those considerations which potentially could merit this designation, even though the respondent has been convicted of a crime involving moral turpitude, are only those which may cause this Court to view the conviction in a light which tends to show that the respondent's illegal act, committed in violation of a criminal statute, resulted from intensely strained circumstances or that the magnitude and the nature of the crime are not so severe as to compel disbarment. On the other hand, we cannot accept as "compelling extenuating circumstances" those proffers by the respondent which in essence call upon us to assess the integrity of the criminal conviction itself — that prior adjudication is conclusive and thus cannot be attacked in a disciplinary proceeding by invoking this Court to reweigh or to re-evaluate the respondent's guilt or innocence. This is so as we are prohibited from such a consideration by Rule BV4 f 1, which provides:

> "In a hearing of charges pursuant to this Rule, a final judgment by a judicial tribunal in another proceeding convicting an attorney of a crime shall be conclusive proof of the guilt of the attorney of such crime. A plea or verdict of guilty, or a plea of *nolo contendere* followed by a fine or sentence, shall

be deemed to be a conviction within the meaning of this Rule. A final adjudication by a judicial tribunal in a disciplinary proceeding that an attorney has been guilty of misconduct shall be considered as conclusive proof of such misconduct in the hearing of charges pursuant to this Rule."

Based on this rule and based on the cases which have applied it, *see Maryland St. Bar Ass'n v. Rosenberg,* 273 Md. 351, 329 A. 2d 106 (1974); *Maryland St. Bar Ass'n v. Kerr,* 272 Md. 687, 326 A. 2d 180 (1974); *Maryland St. Bar Ass'n v. Agnew, supra; see also* concurring opinion in *In re Braverman,* 271 Md. 196, 212, 316 A. 2d 246 (1974), we must conclude, regardless of what the respondent suggests, that the final judgment of the United States District Court for the District of Maryland, entered after Mr. Siegel's nolo contendere plea, is conclusive proof of his guilt of the crime charged.

### (ii)

Aside from the circumstances preceding the nolo contendere plea, the respondent notes that his "record as a member of the Bar for over forty years was unblemished and [that he is] . . . held with obvious esteem in his community, both as a lawyer and as a family man," which he asserts are extenuating circumstances warranting a lesser sanction than disbarment. These plaudits tend to make more distasteful our responsibility in this type of proceeding; but, because "an attorney's character *must remain beyond reproach,*" this "Court has the duty, since attorneys are its officers, to insist upon the *maintenance* of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute. Disciplinary proceedings have been established for this purpose, not for punishment, but rather as a catharsis for the profession and a prophylactic for the public." (emphasis added) *Maryland St. Bar Ass'n v. Agnew, supra* at 549; see *Balliet v. Balto. Co. Bar Ass'n,* 259 Md. 474, 270 A. 2d 465 (1970). Our constancy in this responsibility cannot be shaken by our respect for an individual attorney's reputation, by

our recognition of the longevity of his career at the bar, or by our appreciation for his service to the community. Indeed, some may even suggest that the more years of practice and the greater the stature within and without the profession a member of this bar can boast, the closer the scrutiny and the stricter the demands that should be imposed.

Since the respondent was convicted of a crime involving moral turpitude, and no sufficient and compelling mitigating circumstances were presented in his behalf to justify the imposition of a lesser sanction, the name of Maurice T. Siegel will be stricken from the rolls of those authorized to practice law in this State.

*It is so ordered.*

*Levine, J., dissenting:*

I respectfully dissent. At the outset, it must be observed that certain aspects of this case, of vital significance to the contentions presented by both the bar association and the respondent, have been glossed over by the majority. Hence, they merit further consideration and emphasis here.

First, the cursory reference to the proceedings before Judge Miller in the United States District Court does not reflect the full import of the respondent's plea and its acceptance. As the assistant United States Attorney presenting the case suggested to the court at that time, although the Government normally lodges a "vigorous objection to a nolo contendere plea, especially [when] offered by an attorney in a tax evasion case," in this instance it merely wished to "file a minor technical objection" because of the respondent's "health." Nor, in departing from its customary policy in such cases, did the prosecution make any recommendation of sentence.

Eminent counsel then representing the respondent in the tax case informed the court that he had strongly recommended the negotiations and the resulting plea. For reasons which he thoroughly detailed, it was his considered

opinion that many of the witnesses whom the prosecution intended to call could be discredited, and that the remainder of its case was tenuous. Furthermore, having witnessed the effect upon the respondent of the two-week trial in the Criminal Court of Baltimore, he was truly fearful of the toll — as was the heart specialist treating the respondent — that might be exacted by a six-week trial in the tax case. No one has ever challenged this estimate, nor the likelihood that the respondent's testimony alone would have consumed approximately two weeks. As the record shows, the trial judge sitting in the Criminal Court of Baltimore (Ross, J.) had found it necessary on humane grounds to call frequent recesses of ample duration.

In accepting the plea, Judge Miller emphasized that "absent special circumstances," a plea of nolo contendere normally would not have been allowed "in a case of this type." Nevertheless, he had concluded that this was "one of the *rare* cases in which it would be appropriate" to do so. (emphasis added). Later, at the sentencing hearing, he amplified his reasons:

> ". . . [T]his is a case that would likely be lengthy, at least several weeks. The health of the defendant is very bad, according to the medical reports which I have received and which other members of this Court, in connection with pre-trial motions and matters, have also received.
>
> ". . . [T]his is a type of case in which it is, as a practical matter, almost mandatory that the defendant take the stand and testify in explanation of the various matters[.] . . . Based on the medical evidence which is available to me, such an ordeal, aside from the strain of the trial itself, would be *extremely serious* to the health of the Defendant; and *that is probably putting it as an understatement. . . .*" (emphasis added).

He then proceeded to impose sentence, which he subsequently modified by requiring the respondent merely to serve 22 days at Allenwood Prison Camp.

Secondly, because it erroneously perceives the respondent's emphasis on the weaknesses of the tax case as an effort to attack the conviction itself, the majority completely overlooks the relationship which those infirmities bear to this proceeding. Specifically, as the prosecutor handling the case patiently detailed on three separate occasions (before the federal court, the bar association's grievance committee, and the three-judge panel below), the Government had built its case not only on the conventional "net worth plus expenditure" theory, but also on the estimate by a Department of Labor economist that the respondent and his family had spent specific sums on "consumables." This approach, which had not been previously employed by the Government in this federal district, was in the opinion of the prosecutor "novel"; hence, he and his colleagues "had some question as to whether or not it would be successful."

The remaining proof of the tax case was to rest on the testimony of a large number of witnesses who had been clients of the respondent in connection with various gambling charges lodged against them in the state courts. One particularly large segment of these witnesses had also testified for the state in the criminal court prosecution, where they had been so thoroughly discredited that an acquittal resulted on all of the charges that had been brought to trial. In light of this summary of the tax case, one can appreciate why the prosecutor characterized the nolo contendere plea as a "good deal" for the Government.

The majority dismisses the recommendation of the two former United States Attorneys that the respondent not be prosecuted as an attempt by the latter to equate their evaluation of the tax case with the required "compelling extenuating circumstances." Although this is clearly not the purpose of his argument, it is not inappropriate to consider what one of the former prosecutors did say in these proceedings. Mr. Sachs had thought the case so "thin and weak" that he returned it to the Department of Justice with a recommendation against prosecution. At the hearing before the three-judge panel, he was less delicate,

characterizing the case as a "lousy" one — "a very thin net worth case; . . . we did not feel that the case should go forward. . . . we felt it was marginal at best in terms of strength." This was "the only time [he] remember[ed] disagreeing with the Tax Division" during his tenure as United States Attorney. That the appraisal of the two former United States Attorneys should not be lightly dismissed is perhaps underscored by the observation of bar association counsel that he had never known either of them to "walk away from a difficult case."

The gravamen of the matter, however, is not simply that the federal prosecution might well have failed in the event of a trial. To merely make that point here would amount to little more than — as the majority erroneously regards it — an attack upon the conviction. This is where the majority misconceives the essence of the respondent's position. It is not that because of the weakness of the prosecution's case, he should not be disciplined. The plea of nolo contendere — as the respondent quickly concedes — is dispositive on that score. We are confronted here, however, with the proper sanction to be invoked. To that extent, as the three-judge panel recognized, all mitigating circumstances are relevant.

Therefore, the critical point here is the submission of the nolo contendere plea in light of the suspect quality of the tax case. Manifestly, the answer lies in the poor state of the respondent's health. As the bar association counsel observed, it "denied him his day in court." In short, but for his health, the respondent would have been afforded a full opportunity to defend against the charges; and enough has been said about his prospects in those circumstances.

It is no answer, I submit, to say that the respondent's heart attacks occurred "subsequent to his criminal activity . . . ." Nowhere in *Maryland St. Bar Ass'n v. Callanan*, 271 Md. 554, 318 A. 2d 809 (1974), did we state, much less hold, as the majority does for the first time here, that "compelling extenuating circumstances" may arise only where the conduct itself "resulted from intensely strained circumstances or [where] the magnitude and the nature of

the crime are not so severe as to compel disbarment." While the latter part of that statement is patently without significance, the first part is a wholly unwarranted extension of *Callanan.*

We held in *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 318 A. 2d 811 (1974), that disbarment will follow from conduct such as occurred here absent "the most compelling extenuating circumstances." Both the bar association and the three-judge panel thought this was such a case, and so do I. If what we truly meant to say was that a conviction on such charges will automatically and *absolutely* result in disbarment, we should not have included any idle expressions about "compelling extenuating circumstances." As I read the majority opinion — in light of the facts here — I sincerely question whether it is realistic to suggest that a state of facts can ever exist which will suffice to avoid disbarment in this kind of case.

It must now be clear to the respondent that he was confronted with a monumental "Hobson's choice" when he appeared in the federal court: either run a serious risk of losing his life by going to trial on a case acknowledged by virtually everyone officially associated with it to be a weak one; or face certain disbarment by pleading nolo contendere in reliance upon the sound medical and legal advice which he had received. If what we said in *Agnew* in respect to "compelling extenuating circumstances" has any vitality at all, that exception applies here. If it does not, as the majority holds, I am at a loss to imagine when it could ever apply.

I would adopt the carefully considered recommendation of the three-judge panel and suspend the respondent for one year. Judges Singley and Eldridge authorize me to state that they concur in this opinion.