## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND v. ROBERT J. FLYNN

[Misc. Docket (Subtitle BV) No. 9, September Term, 1977.]

*Decided June 22, 1978.*

42

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*John Addison Howard, Deputy Bar Counsel,* with whom was *L. Hollingsworth Pittman, Bar Counsel,* on the exceptions, for petitioner.

*Joseph S. Casula* for respondent.

DIGGES, J., delivered the opinion of the Court. LEVINE, ELDRIDGE and COLE, JJ., concur in the order only.

The only contested issue for our determination in this attorney disciplinary action is whether the indefinite

suspension sanction recommended by the judicial panel should be imposed for the misconduct shown here, as is urged by attorney-respondent Robert J. Flynn, or whether that sanction should be supplanted by a disbarment order as is strenuously argued by petitioner, the Attorney Grievance Commission of Maryland.

In August of 1974 Mr. Flynn, in the course of practicing his profession in Prince George's County, was retained by longtime friends and clients, Ezra and Doreen Elkins, to represent them in a personal injury and property damage claim resulting from a two-car accident involving a vehicle driven by Mrs. Elkins. The dispute with the driver of the second vehicle was settled without a trial for $2834.96. Upon receipt of the check from the other driver's insurance carrier, Mr. Flynn obtained its endorsement by his clients and deposited the settlement draft on July 27, 1975, in a checking account he had opened in May of that year with the Equitable Trust Company titled "Robert J. Flynn, Attorney at Law, Trust Account." Although the designation would indicate to the contrary, the account in fact was used by the attorney as a depository for both his own funds and those of his clients. The record discloses that it was not until October 7th that Mr. Flynn made any effort to pay over to his clients their portion of the settlement monies, which, after deducting attorney's fees, amounted to slightly more than $2100.00. The attorney's check, even though received by the clients several days later, was not presented by them to the bank for payment until some time in January 1976; upon presentation the check was dishonored and returned to the payees because at that time there were insufficient funds on deposit to cover it. The amount due Mr. and Mrs. Elkins, however, was fully paid by the attorney in February of that year with monies he borrowed for this purpose. From the record we learn there were sufficient funds in the bank account to pay the October draft had it been presented promptly. Nevertheless, it is quite clear that there were a number of occasions between July 1975, when the settlement check was deposited, and the time Mr. and Mrs. Elkins received the monies due them in February 1976, when the bank account had a balance

insufficient to pay the amount due by the attorney to his clients.[1]

The three-judge panel to which we referred the misconduct allegations (Maryland Rule BV9 b) for factual determinations and its recommendation as to the proper disposition of the charges (Rule BV11 a) concluded that Mr. Flynn (i) neglected legal matters which were entrusted to him, in violation of DR 6-101 (A) (3); (ii) deposited funds belonging to his clients in his own, rather than in a separate, bank account, in violation of DR 9-102 (A); (iii) failed to maintain a complete record of his clients' funds coming into his possession and to promptly deliver to the clients these monies, in violation of DR 9-102 (B); and (iv) commingled his clients' funds with his own and used them "for [a] purpose other than the purpose for which such funds were entrusted to him," in violation of the Maryland Code (1957, 1976 Repl. Vol.), Art. 10, § 44.[2] The parties contest neither these legal conclusions nor the judicial panel's factual findings which underlay them, including those which will be referred to a little later, and as a consequence without further discussion we adopt them as our own.

---

1. On an unrelated legal matter which the respondent had undertaken for Mr. Elkins, the three-judge panel found that though the client paid Mr. Flynn $60.00 on July 11, 1975, to cover the bonus tax and recording costs in the Commonwealth of Virginia of the Articles of Incorporation pertaining to his business, for no valid reason the attorney delayed recording the document until November 1975.

2. Article 10, section 44, reads as follows:

(a) If any attorney is entrusted with, or receives and accepts, or otherwise holds, deposit moneys or other trust moneys, of whatever kind or nature, such moneys, in the absence of written instructions or court order to the contrary shall be expeditiously deposited in an account maintained as a separate account or accounts for funds belonging to others. In no event shall he commingle any such funds with his own or use any such funds for any purpose other than the purpose for which such funds were entrusted to him.

(b) Any attorney wilfully violating the provisions of this section shall be charged with professional misconduct, malpractice, or conduct prejudicial to the administration of justice and shall be proceeded against for reprimand, suspension, or disbarment under any applicable provision of this article or any other law or the Maryland Rules.

(c) Any attorney wilfully violating the provisions of this section, in addition to the penalties set forth in subsection (b) hereof, shall be guilty of a misdemeanor for each such violation and on conviction thereof, shall be fined not more than five thousand dollars ($5,000)

Turning now to a consideration of the central issue for our determination — the proper sanction for these admitted professional transgressions — we recall, preliminary to a discussion of the specifics here, some general observations from our prior decisions. That this Court takes a very dim view of members of the bar who at the expense of their clients elect to feather their nests should by now be plain to all. *Attorney Grievance Comm'n v. Cooper,* 279 Md. 605, 369 A. 2d 1059 (1977); *Bar Ass'n of Balto. City v. Posner,* 275 Md. 250, 339 A. 2d 657, *cert. denied,* 423 U. S. 1016 (1975); *In re Barton,* 273 Md. 377, 329 A. 2d 102 (1974); *Bar Ass'n of Balto. City v. Carruth,* 271 Md. 720, 319 A. 2d 532 (1974); *Bar Ass'n. v. Marshall,* 269 Md. 510, 307 A. 2d 677 (1973); *Balliet v. Balto. Co. Bar Ass'n,* 259 Md. 474, 270 A. 2d 465 (1970); *In the Matter of Lombard,* 242 Md. 202, 218 A. 2d 208 (1966); *In re Williams,* 180 Md. 689 (unreported), 23 A. 2d 7 (reported in full) (1941). Thus, absent compelling extenuating circumstances, present and associated with the illegal or improper acts at the time committed, *Bar Ass'n of Balto. City v. Siegel,* 275 Md. 521, 527, 340 A. 2d 710, 713 (1975), when an attorney engages in conduct which entails dishonesty, as we determine is true in the present case, that attorney will be disbarred as a matter of course to protect the public from being victimized by his further dishonesty. *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 550, 318 A. 2d 811, 815 (1974).

In this case, after reviewing the record with meticulous care, we have concluded that there did exist serious physical and mental illness at the time of the commission of the dishonest and otherwise improper acts, which, while not excusing them, was to a substantial degree causally connected and is sufficiently exculpatory that it warrants our not imposing the ultimate sanction of disbarment; instead we will order a sanction that is a smidgeon less severe — suspension from the practice of law in this State for an indefinite time period. We explain our reasons.

or be imprisoned for not more than five (5) years, or both in the discretion of the court.

Mr. Flynn's conduct in violation of this statute would also have subjected him to possible disciplinary action under DR 1-102 (A).

From the uncontested objective testimony of the respondent's physicians, his law office and other business associates, and his social and professional acquaintances — and not from his own subjective statements — we are aware of the relevant life picture of Mr. Flynn. After being admitted to the Bar of this Court in 1966, the respondent began the practice of law in Prince George's County the following January. It is apparent that he quickly became a very competent and highly successful lawyer who enjoyed the esteem of both his fellow practitioners and members of the bench before whom he appeared. As might be expected with the substantial clients· Mr. Flynn represented, his practice was also financially rewarding as he earned in excess of $60,000 during a number of these early years.

The record reveals, however, that beginning in approximately 1971 Mr. Flynn's personality, lifestyle, and professional competence gradually deteriorated; over the next five or six years, he was transformed from a highly motivated, orderly, and competent attorney into a morose, alcoholic individual, despondent to the point of being suicidal, who neglected his law practice and other business interests to such an extent that by 1975 he was earning less than $10,000 per year. Over this time span and after, Mr. Flynn was divorced, had considerable problems with his teenage son, changed his office associates and location on a number of occasions, and spent most of his waking hours drinking alcohol. At the time the acts complained of took place he was in the process of closing his law practice in order to seek some less demanding type of employment.

From these uncontroverted facts we conclude, as did the judicial panel, that the acts giving rise to the charges here to a substantial extent resulted from the physical and mental maladies this attorney was suffering; the appropriate sanction is largely dictated by our actions under quite similar circumstances in *Attorney Grievance Comm'n v. Cooper, supra,* where we suspended the attorney for an indefinite time.[3] Lest this respondent or anyone else glean from our

3. In Attorney Grievance Comm'n v. Cooper, 279 Md. 605, 369 A. 2d 1059 (1977), we rejected the attorney's contention that he should be placed on inactive status as incompetent under Maryland Rule BV11 a 2.

action here a softening of our revulsion for misuse by an attorney of his client's funds, we hasten to add that there is no end to a suspension imposed in these circumstances except upon a showing, by clear and convincing evidence amounting to a moral certainty, that the malady has been removed and rehabilitation is complete so that the illegal and improper acts will never be repeated. Accordingly, we accept the judicial panel's recommendation and will suspend Robert J. Flynn from the practice of law in Maryland for an indefinite period.

*It is so ordered.*

Levine, Eldridge, and Cole, JJ., concur in the Order but not in the Court's reasoning.