## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND *v.* ROBERT L. GILLAND

[Misc. (BV) No. 10, September Term, 1981.]

*Decided April 8, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Alan D. Krause, Assistant Bar Counsel,* with whom was *Melvin Hirshman, Bar Counsel,* on the petition, for petitioner.

*H. Russell Smouse* for respondent.

COLE, J., delivered the opinion of the Court. DAVIDSON, J., would have suspended for no longer than six months. SMITH and DIGGES, JJ., dissent. SMITH, J., filed a dissenting opinion at page 322 *infra*, in which DIGGES, J., joins.

We are once again faced with the unpleasant task of disciplining a member of the Maryland Bar for his violation

of a criminal statute. The crime involved here is willfully failing to file federal income tax returns.

In 1979, Robert L. Gilland, a member in good standing of the Maryland Bar since 1957, was charged with willfully failing to file his federal income tax returns for the years 1972, 1973, and 1974, in violation of 26 U.S.C. § 7203. Gilland pleaded not guilty and was tried by a jury in the U. S. District Court for the District of Maryland. The jury returned a verdict of guilty and Gilland was sentenced to nine months imprisonment and fined $30,000. That sentence was subsequently reduced to two months imprisonment, one year suspended sentence and a fine of $10,000. Gilland appealed the convictions to the U. S. Court of Appeals for the Fourth Circuit, which affirmed.

Subsequent to the outcome of the criminal proceedings, a complaint was lodged with the Attorney Grievance Commission. The complaint was reviewed and charges were filed against Gilland in the Court of Appeals by Bar Counsel pursuant to Maryland Rule BV 9. The case was assigned for hearing to Judge Austin W. Brizendine of the Circuit Court for Baltimore County where Bar Counsel alleged violations of Disciplinary Rules 1-102 (A) (1) through (A) (6).[1]

At the disciplinary hearing Gilland did not challenge his convictions in federal court [2] but submitted his case to the hearing judge on exhibits relating to the criminal charge and its adjudication, the transcript of the Inquiry Panel's

---

1. DR 1-102 Misconduct

    (A) A lawyer shall not:
- (1) Violate a Disciplinary Rule.
- (2) Circumvent a Disciplinary Rule through actions of another.
- (3) Engage in illegal conduct involving moral turpitude.
- (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
- (5) Engage in conduct that is prejudicial to the administration of justice.
- (6) Engage in any other conduct that adversely reflects on his fitness to practice law.

2. See Maryland Rule BV 10e; which provides in pertinent part, that "a final judgment by a judicial tribunal in another proceeding convicting an attorney of a crime shall be conclusive proof of the guilt of the attorney of that crime."

proceeding before the Attorney Grievance Commission, and memoranda of law prepared by counsel. After hearing argument from both parties and reviewing the record, the hearing judge concluded that, by willfully failing to file his federal income tax returns, Gilland had engaged in conduct prejudicial to the administration of justice and thereby violated DR 1-102 (A) (5). The hearing judge also concluded that there had been no intent on Gilland's part to cheat the government or to dodge the payment of his taxes altogether. Accordingly, he held that Gilland had not violated DR 1-102 (A) (3) or (A) (4) relating to conduct involving moral turpitude, fraud, and dishonesty.

Convictions for willful failure to file income tax returns have received diverse treatment by this Court and have resulted in a variety of sanctions. The question concerning such convictions usually centers on whether moral turpitude or dishonesty or fraud is involved. In cases where the attorney's failure to file was motivated by a desire to deprive the government of income to which it was rightfully entitled we have held that deceit and moral turpitude were involved and ordered disbarment. *See Attorney Grievance Commission v. Barnes,* 286 Md. 474, 408 A.2d 719 (1979); *Rheb v. Bar Ass'n of Baltimore,* 186 Md. 200, 46 A.2d 289 (1946). Where, however, the failure to file was the result of circumstances not amounting to moral turpitude, dishonesty, or fraud, we have imposed a less onerous sanction commensurate with the gravity of the offense and tailored to the facts of the particular case. *See Attorney Grievance Commission v. Walman,* 280 Md. 453, 374 A.2d 354 (1977); *Bar Ass'n of Baltimore City v. McCourt,* 276 Md. 326, 347 A.2d 208 (1975).

In the instant case, Bar Counsel does not contend that Gilland's failure to file his income taxes was the result of an intent to conceal his tax liability and thereby escape payment. Nor does Bar Counsel argue to us that the hearing judge erred in concluding that Gilland was free from conduct involving moral turpitude, dishonesty, or fraud. Thus, since there was no moral turpitude, dishonesty, or fraud involved, the rule announced in *Maryland State Bar Assoc. v. Agnew,* 271 Md. 543, 318 A.2d 811 (1974), (absent compelling

extenuating circumstances, disbarment of an attorney follows from conviction of a crime wherein these elements are present) does not apply here. However, willful failure to file tax returns, by itself, is "such conduct as may result in the imposition of any one of the sanctions prescribed by Rule BV 11al, that is, reprimand, suspension, or disbarment." *Attorney Grievance Commission v. Walman, supra,* 280 Md. at 463. Therefore, to determine an appropriate sanction our attention must focus on the factors considered in those cases involving similar circumstances and the events peculiar to this case.

In *Attorney Grievance Commission v. Walman, supra,* an attorney was convicted in federal court of failing to file his income tax returns and was subsequently disbarred from practicing before the U. S. District Court for the District of Maryland. The attorney had been providing substantial financial assistance to members of his family, which resulted in his being unable to pay what he owed in taxes. He knew, however, that he could have avoided criminal prosecution by filing without payment and he was unable to offer any other explanation for his failure to file his returns. There was evidence that the attorney suffered from some physical ailments through this period but the hearing court found it of limited significance. This court concluded that the attorney "diverted to personal or family use the very funds with which he might have paid part, if not all, of the taxes which he owed . . . [and] that he could have avoided criminal prosecution, in any event, merely by filing his returns as required by law." *Id.* at 466. Finding no mitigating circumstances in the attorney's misconduct, the Court ordered that he be suspended from the practice of law for three years.

In *Bar Ass'n of Baltimore City v. McCourt, supra,* this Court adopted the memorandum opinion of the three judge panel where an attorney had been convicted of one count of failing to file and had pleaded *nolo contendere* to three others. The evidence showed that the attorney had not reported the income he received from legal fees to the I.R.S. for the years 1964, 1965, 1966, and 1967. In April, 1968, the attorney left the U. S. for three years and was tried when he

returned. The Court considered that the tax liability involved was very small and that the attorney suffered from a personality disorder classified as a "passive-aggressive personality, passive-dependent type." *Id.* at 330. The Court also noted that despite this psychological problem the attorney had continued to practice law and had not been psychiatrically treated for the disorder. The Court approved the recommendation of the three judge panel that the attorney be suspended for one year.

It is interesting to note that in *Walman,* where the Court discussed sanction, it pointed out that the reason Walman received a longer suspension than McCourt was the fact that none of the mitigating factors present in *McCourt* was present in *Walman.* Additionally, the Court in *Walman* also referred to two unreported decisions where the Court of Appeals authorized suspensions of one year for convictions for willful failure to file taxes.

Turning our attention to the circumstances surrounding Gilland's conviction it is clear that there are several mitigating factors present. Gilland retained an accounting firm in September 1972 to prepare his 1970 and 1971 tax returns. Those returns were completed in October 1972, and September, 1973, respectively. The firm began working on the 1972 returns when the accountant handling Gilland's affairs left the firm. There is some discrepancy as to whether the 1972 returns were completed before the accountant left. In any event, in the spring of 1975 Gilland hired another accountant to handle his taxes. Gilland's wife, who at this time was doing the bookkeeping, and this accountant were in frequent contact with the I.R.S. regarding the status of the returns. This second accountant delayed in filing the 1972 returns while he waited for copies of Gilland's 1968 and 1969 records from the Internal Revenue Service Center, as he intended to average Gilland's income for those years. A further source of delay was the fact that Gilland's records were disorganized and the returns themselves were complicated. Ultimately, the returns were filed prior to indictment but, obviously, not before a sufficient time lapse had occurred to sustain the charges of failing to file.

At the time this conflict with the I.R.S. was taking place Gilland was also beleaguered by a series of personal and family difficulties. In March, 1971, the child of his third wife's former marriage shoved a stick into the eye of Gilland's son, causing him to virtually lose the use of that eye. This marriage broke up and, shortly afterward, ended in divorce. In November, 1972, Gilland's fifteen year old daughter was confined to Sheppard and Enoch Pratt Hospital until May, 1973. His two sons from a former marriage came to live with him from his former wife's custody without prearrangement. In January, 1975, Gilland's father had a cancerous lung removed and convalesced in Gilland's home. During this time, Gilland also suffered from a problem with excessive drinking.

There is evidence in the record that Gilland was psychologically and emotionally off balance during much of this time. Several doctors testified to the existence of some mental disorder, though there was considerable difference of opinion as to exactly how to characterize it. The hearing court, however, found this, too, to be of limited significance since it did not interfere with his functioning as an attorney.

It is apparent that the mitigating factors not present in *Walman* are present in abundance here. During a time of personal and domestic upheaval, Gilland fell in arrears in computing and filing his federal taxes. His dilemma was exacerbated by the fact that, while he was apparently a competent attorney, the state of his records indicate that he was a poor bookkeeper. His attempts to secure professional assistance to shore up his weakness in accounting were only partly successful. The accountant who began work on his returns was unable to complete them and the second accountant who ultimately did complete them was delayed to some extent by having to wait for records from the I.R.S. Throughout this period Gilland, his wife, and his accountants were in constant contact with I.R.S., indicating absolutely no intent to defraud the government.

Balanced against these mitigating circumstances, however, is the fact that a member of the Bar stands convicted of voluntarily and intentionally failing to perform a known

legal duty. Such willful disobedience to known legal responsibilities may seriously impair public confidence in the entire profession and this Court will not place its imprimatur on such conduct.

Accordingly, we conclude that the appropriate sanction is a suspension from the practice of law in this State for a period of two years accounting from thirty days from the filing of this opinion. He shall stand suspended beyond that date unless and until all costs incurred in connection with this proceeding are paid in full.

> *It is so ordered; respondent shall pay all costs as taxed by the Clerk of this Court, including the costs of transcripts, pursuant to Maryland Rule BV15 c for which sum judgment is entered in favor of the Attorney Grievance Commission against Robert L. Gilland.*

Judge Davidson would have suspended for no longer than six months.

*Smith, J., dissenting:*

The amount of gross income here involved for the three years in question was well in excess of a quarter of a million dollars. As Chief Judge Murphy pointed out in his dissent (in which Judge Digges and I joined) in *Attorney Grievance Comm'n v. Walman,* 280 Md. 453, 374 A.2d 354 (1977):

"While fraud may not be an actual element of the crime of which Walman was convicted, it is clear, as the majority acknowledges, that a voluntary, intentional violation of the known duty to make a federal income tax return is requisite to conviction (as contrasted with failure to file through accident, mistake or other innocent cause)." 280 Md. at 467-68.

Notwithstanding the determination by the trial judge that no moral turpitude was involved in this case, I would hold

that there was and thus that Gilland should be disbarred. There is a more compelling reason for disbarment, however.

In this case the trial judge found "any medical condition [to be] of limited significance since it did not interfere with [Gilland's] functioning as an attorney," adding that Gilland "maintained his law practice during the period in question." Gilland has referred to his psychiatrist's testimony that he met the American Law Institute test of not being criminally responsible because of a substantial mental disease or defect, etc.

This man's psychiatrist said that Gilland was not able to meet deadlines. If Gilland is unable to meet deadlines in his own affairs, then he is unfit to be entrusted with the affairs of others.

I continue to adhere to the views I expressed in my dissent in *Walman* (in which Chief Judge Murphy and Judge Digges joined):

> "When a lawyer so neglects his own affairs as to fail for three successive years to do that which every citizen of this republic knows that he must do if his income is more than a mere pittance, namely to file an income tax return, then I conclude that he has demonstrated that he is not the type of person to whom we may in confidence entrust the handling of the affairs of others. I would disbar. Therefore the above is an additional reason for disbarment." 280 Md. at 471.

I am authorized to state that Judge Digges joins in the views here expressed.