550 A.2d 1150

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Victor H. SPARROW, III.**

**Misc. Docket (Subtitle BV) No. 30, Sept. Term, 1987.**

Court of Appeals of Maryland.

Dec. 20, 1988.

Melvin Hirshman, Bar Counsel and Kendall R. Calhoun, Asst. Bar Counsel, for Atty. Grievance Com'n of Maryland, for petitioner.

Sheila D. Brooks, Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

Before us in this case is the question of what sanction should be imposed on a member of the Maryland Bar who,

in 1982, was convicted of serious crimes by a federal court in California, in 1985 suspended from the practice of law in California, and in 1987 reinstated in California.

In May 1984, a hearing panel of the Hearing Department of the State Bar Court of the State Bar of California [1] found that respondent, Victor H. Sparrow, III, a member of the California Bar, had

> during the period from 1980 through 1982, . . . conspired with others to direct and manage a sham marriage ring in order that aliens could illegally obtain permanent status in the United States. The sham marriages were arranged by the conspirators and [Sparrow] thereafter knowingly filed documents which he knew to be false, with the Immigration and Naturalization Service (INS) regarding said marriages.

In addition, the panel found that Sparrow had suborned perjury (by advising the aliens to give false answers at INS proceedings) and had stolen government property (an INS manual). Sparrow was convicted of these offenses on 24 November 1982 by a jury in the United States District Court for the Southern District of California.[2] The State Bar Court panel recommended disbarment.

On 31 August 1984, the Review Department of the State

---

**1.** A hearing panel of the California State Bar Court approximates an inquiry panel established pursuant to Md. Rule BV5 c.

**2.** Specifically, Sparrow was convicted under Counts 1, 3, 5, 12, and 20 of the indictment filed against him. Count 1 charged conspiracy to make false statements, suborn perjury, and steal government property in violation of 18 U.S.C. §§ 371, 1001, 1621(1), 1622, and 641. Each of Counts 3 and 5 charged a specific instance (in 1981) of the making of a false statement in violation of 18 U.S.C. § 1001. Count 12 charged an instance of subornation of perjury in violation of 18 U.S.C. §§ 1621(1) and 1622. Count 20 charged theft of government property (the INS manual) in violation of 18 U.S.C. § 641. On 10 January 1983 Sparrow was sentenced to four two-year concurrent sentences on the convictions under Counts 1, 3, 5, and 12 (later reduced to 18 months). Under the Count 20 conviction, he received five years of probation, consecutive to the other sentences.

Bar Court[3] adopted the panel's factual findings as to Sparrow's misconduct and recommended that he be suspended from the practice of law in California for five years, that the execution of the order for suspension be stayed, and that Sparrow be placed on probation for five years, subject to a number of conditions. One of the conditions was that Sparrow be suspended from the practice of law during the first two years of his probation. At the conclusion of the probationary period, and upon performance of the terms of probation, Sparrow's suspension was to be automatically terminated.

This became the recommendation of the State Bar Court of California. This was the sanction imposed by the Supreme Court of California on 21 March 1985, effective 19 April 1985.[4] Sparrow was reinstated in California on 19 April 1987.

When discipline was imposed in California, Sparrow was a member of the Maryland Bar as well as that of California.[5] For reasons not apparent from the record, however, official word of the California disciplinary action did not reach Maryland in timely fashion; indeed, it never reached Maryland through official channels. Sparrow at some point applied for membership in the Maryland State Bar Association, and in the course of applying, candidly revealed his California difficulties. The Maryland State Bar Association apparently informed the Attorney Grievance Commission. That agency's Review Board, on or about 9 December 1987 (almost eight months after Sparrow had been reinstated in

---

3. The Review Department approximates the Md. Rule BV5 d Review Board.

4. At the time of the California proceedings against Sparrow, after an attorney's conviction of a crime of moral turpitude has become final, the Supreme Court of California could either disbar or suspend the attorney "according to the gravity of the crime and the circumstances of the case...." Cal.Bus. & Prof.Code § 6102(b) (West 1974 & Supp. 1988) [as § 6102(b) stood before 1985 amendments and after 1981].

5. He had also been admitted to practice in New York, Pennsylvania, Rhode Island, and the Trust Territory of the Pacific Islands.

California), authorized the initiation of the proceedings now before us.

Before Judge Morris Turk, of the Circuit Court for Anne Arundel County, to whom we referred the case pursuant to Rule BV9 b, the parties stipulated to the proceedings before the United States District Court for the Southern District of California and to the California disciplinary proceedings. Judge Turk found that Sparrow had violated Disciplinary Rule 1–102(A)(1), (3), (4), (5), (6).[6] There are no exceptions to any of Judge Turk's findings or conclusions. Under Rule BV10e1 "a final judgment by a judicial tribunal in another proceeding convicting an attorney of a crime shall be conclusive proof of the guilt of the attorney of that crime" and "[a] final adjudication in a disciplinary proceeding by a judicial tribunal ... that an attorney has been guilty of misconduct is conclusive proof of the misconduct in the hearing of charges pursuant to this Rule."

Sparrow, then, does not contest the fact that, at the beginning of this decade, he was guilty of serious criminal misconduct. He contends, nevertheless, that we should impose a sanction no greater than that administered by California. Bar Counsel, on the other hand, recommends the ultimate sanction of disbarment.

The California disciplinary proceedings conclusively establish the fact of Sparrow's misconduct. This does not mean, however, that we must apply the same sanction that California applied. True, we have often imposed a sanction of facially equal severity as that imposed by a sister state.

---

**6.** Disciplinary Rule 1–102. Misconduct.

  (A) A lawyer shall not:

    (1) Violate a disciplinary rule.

        \*    \*    \*    \*    \*    \*

    (3) Engage in illegal conduct involving moral turpitude.

    (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

    (5) Engage in conduct that is prejudicial to the administration of justice.

    (6) Engage in any other conduct that adversely reflects on his fitness to practice law.

*See, e.g., Attorney Griev. Comm'n v. Bettis*, 305 Md. 452, 505 A.2d 492 (1986) (attorneys disbarred in District of Columbia and later in Maryland); *Attorney Griev. Comm'n v. Moore*, 301 Md. 169, 482 A.2d 497 (1984) (per curiam) (same); *Attorney Griev. Comm'n v. Hines*, 304 Md. 625, 500 A.2d 646 (1985) (per curiam) (attorneys suspended in District of Columbia later suspended for like period in Maryland); *Attorney Griev. Comm'n v. Rosen*, 301 Md. 37, 481 A.2d 799 (1984) (per curiam) (same); *Attorney Griev. Comm'n v. James*, 300 Md. 297, 477 A.2d 1185 (1984) (same). But the rule is that in cases of reciprocal discipline we look not only to the sanction imposed by the other jurisdiction but to our own cases as well. The sanction will depend on the unique facts and circumstances of each case, but with a view toward consistent dispositions for similar misconduct.

*Attorney Griev. Comm'n v. Parsons*, 310 Md. 132, 142, 527 A.2d 325, 330 (1987). Thus, in *Parsons*, we looked to our own cases and imposed a 90–day suspension, instead of the six-month suspension that the District of Columbia had found appropriate. *Id.* at 143–143, 527 A.2d at 330.

When we look to our own cases, however, we find that they seem to demand a sanction more severe than the suspension imposed in California. The crimes of which Sparrow was convicted—the misdeeds conclusively established by the California proceedings—involved lying, subornation of perjury, stealing, and conspiracy to commit those acts as part of a sham marriage scheme designed to deceive INS. Moreover, the State Bar Court of the State Bar of California found that the conspiracy of which Sparrow was convicted was undertaken for personal gain. In such a case, disbarment is the general rule in Maryland, unless the lawyer can demonstrate by clear and convincing evidence that compelling extenuating circumstances call for a different result. *Attorney Griev. Comm'n v. Ezrin*, 312 Md. 603, 541 A.2d 966 (1988) (stealing money from law firm); *Attorney Griev. Comm'n v. Goldberg*, 307 Md. 546, 515 A.2d 765 (1986) (misappropriation of clients' funds); *Attor-*

*ney Griev. Comm'n v. Newman,* 304 Md. 370, 499 A.2d 479 (1985) (mail fraud); *Attorney Griev. Comm'n v. Noren,* 293 Md. 611, 446 A.2d 423 (1982) (bribery); *Attorney Griev. Comm'n v. Klauber,* 289 Md. 446, 423 A.2d 578 (1981) (mail fraud); *Bar Ass'n of Balto. City v. Siegel,* 275 Md. 521, 340 A.2d 710 (1975) (false and fraudulent tax returns); *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 318 A.2d 811 (1974) (same); *In the Matter of Lombard,* 242 Md. 202, 218 A.2d 208 (1966) (converting assets of estate).

Sparrow insists that in his case there are compelling extenuating circumstances that should persuade us not to apply the stringent Maryland doctrine. The evidence he cites as mitigating is essentially uncontradicted and is, for the most part, contained in the extensive transcripts of the California disciplinary proceedings. It shows that Sparrow, the son of a postal clerk and a domestic servant, worked his way through college and Harvard Law School, graduating from the latter in 1969. He then served as a White House Fellow and was later employed as a lawyer with several major corporations and with the Securities and Exchange Commission. In all of these capacities, his performance was excellent and his conduct and character exemplary.

While working for one of these corporate employers, Sparrow was stationed in the Philippine Islands, where he met and married a native of that area. Eventually he and his family settled in San Diego, California, where Sparrow continued to work as a corporate lawyer. Eventually, his employer began to curtail its operations, and in order to retain Sparrow's services, offered him a transfer to Chicago. Sparrow declined, apparently because his wife insisted on remaining in the San Diego area, and left that job. His wife was running a travel agency in San Diego. Sparrow set up a solo law practice at the travel agency while seeking another corporate position.

The solo practice was eminently unsuccessful. Sparrow had had no experience at running a law office; he had no

clients; he had substantial financial burdens; and he was in a period of great personal turmoil produced in part by his domineering spouse, who had insisted on remaining in San Diego instead of going to Chicago. It also appears that his spouse and some of her compatriots in the travel agency were operating the immigration scam in which Sparrow became embroiled and which brought about his 1982 conviction, along with that of his spouse.

When the Review Department of the State Bar Court recommended suspension rather than disbarment, it found as facts that Sparrow had "no prior record of discipline, he was inexperienced in private practice and his wife presented him with the opportunity to become enmeshed in the activities which led to his conviction." [7]

All of this shows, argues Sparrow, that his participation in the immigration scheme was but a bizarre episode in an otherwise exemplary life; an episode induced by heavy domestic and financial pressures, and one that is most unlikely to recur. But even if we accept all of this to be true (and this is a conclusion a reasonable fact-finder might draw from the record), it is not enough to show the existence of compelling extenuating circumstances within the meaning of the Maryland decisions. Three examples suffice to make the point.

---

7. The California hearing panel made a number of factual findings in Sparrow's case. These included that Sparrow had not demonstrated remorse, that the evidence did not show mitigating factors, and that the evidence did not show that Sparrow had been rehabilitated. The panel recommended disbarment with the right to file a petition for reinstatement after three years. The Review Department struck out the three fact-findings listed above and substituted this:

[Sparrow] presented overwhelming evidence of mitigation and remorse through the testimony of witnesses and letters of recommendation. [Sparrow] has no prior record of discipline, he was inexperienced in private practice and his wife presented him with an opportunity to become enmeshed in the activities which led to his conviction.

The Supreme Court of California did not modify the findings or recommendations of the Review Department.

*Ezrin, supra,* involved a lawyer who stole money from his law firm. There was evidence that his actions might be "attributable to a . . . mixed personality disorder." 312 Md. at 604, 541 A.2d at 966. He was frustrated, angry, resentful, vengeful. *Id.* at 604–606, 541 A.2d at 966–967. In the words of a testifying psychiatrist, " 'he was caught in the vortex of his depression, and the emotional problems that he had at the time.' " *Id.* at 607, 541 A.2d at 968. On the other hand, there was evidence (accepted by the hearing judge) that Ezrin, despite his need for psychiatric treatment, was under no compulsion to steal and was able to discontinue his thievery at any time. *Id.* at 604–605, 541 A.2d at 966–967. We

> carefully reviewed . . . his general good character, his excellent reputation as a lawyer, lack of prior misconduct, his restitution of the stolen funds, and his cooperation with the authorities. None of these [we concluded] constitutes compelling extenuating circumstances . . . that would warrant a sanction other than disbarment.

312 Md. at 609, 541 A.2d at 969 [citation omitted].

In *Siegel, supra,* we rejected as insufficiently compelling, extenuating circumstances, (Siegel's ill-health) which he said had induced him to enter a nolo contendere plea to a charge of tax evasion, in order to avoid the physical strain of a trial, despite the weakness of the government's case. 275 Md. at 528, 340 A.2d at 714. Although Siegel had an unblemished record of 40 years at the Bar and was esteemed in his community as a lawyer and as a family man, we disbarred him. *Id.*

By way of contrast, we may look at *Attorney Griev. Comm'n v. Gilland,* 293 Md. 316, 443 A.2d 603 (1982). Gilland was convicted of failing to file federal tax returns for several years. 293 Md. at 317, 443 A.2d at 604. We considered as mitigating factors problems Gilland had with his accountants, his disorganized record keeping, and the fact that he was "beleaguered by a series of personal and

family difficulties" during the period in question so that he was "psychologically and emotionally off balance during much of this time." *Id.* at 321, 443 A.2d at 606. We did not disbar Gilland; we suspended him for two years. *Id.* at 322, 443 A.2d at 607. The distinguishing feature is that the hearing judge found (and we accepted the finding) that Gilland, unlike Ezrin and Siegel, had not committed a crime of moral turpitude because he did not intend to defraud the government. *Id.* at 321, 443 A.2d at 606.

Thus, we see that when a crime or an act of moral turpitude involving fraud or dishonesty is implicated, disbarment is the sanction absent compelling extenuating circumstances; but where there is no moral turpitude, mitigating factors of lesser magnitude may be considered in determining the appropriate sanction. Sparrow was convicted of crimes of moral turpitude, crimes at least one of which he was found to have committed for personal gain. The mitigating factors he urges upon us do not amount to compelling extenuating circumstances under Maryland law.[8]

Nevertheless, under the unusual facts of this case, we do not think that disbarment is the proper sanction. What we have before us is much more like a reinstatement proceeding than an ordinary disciplinary proceeding. Sparrow's criminal misconduct occurred well over six years ago. He was sentenced more than five years ago and released from imprisonment more than four years ago. Proceedings before the California disciplinary agency were held in 1984. In 1985, he was suspended in that state for what was, in effect, two years. He was reinstated in California in 1987.

---

**8.** Sparrow argues that two cases, *Attorney Griev. Comm'n v. Flynn,* 283 Md. 41, 387 A.2d 775 (1978), and *Attorney Griev. Comm'n v. Cooper,* 279 Md. 605, 369 A.2d 1059 (1977), are applicable. Those cases, however, are clearly distinguishable. Each involved an attorney who suffered from alcoholism, and whose acts were a direct result of his condition. Here, the crimes committed by Sparrow were not found to be the direct result of such a physically and mentally disabling condition.

Evidence produced at the California disciplinary hearing strongly endorsed Sparrow's general competence as a lawyer and integrity as an individual. There were both testimony and letters, and these related to his character and conduct both before and after the criminal episode. As we have seen, this evidence convinced the California Review Department of both mitigating factors and Sparrow's remorse. *See* note 7, *supra,* and accompanying text. At the Maryland hearing, Judge Turk found that Sparrow "admitted he did wrong" and expressed remorse. Nothing was presented there to suggest any misconduct of any sort on Sparrow's part since the federal convictions, or any activity since then that would reflect adversely on his character. It seems that he is working in the District of Columbia in the real estate field. He is licensed there and in March, 1988, also received a Maryland real estate broker's license from the Real Estate Commission "after voluntary disclosure by [Sparrow of his California criminal and disciplinary history] and a hearing on the merits...." [9] He is no longer married to the spouse who figured so prominently in the California debacle.

The question we must answer is: what sanction against Sparrow is now required in order to protect the citizens of Maryland and preserve the integrity of our Bar? In *Agnew, supra,* we said that "[d]isciplinary procedures have been established ..., not for punishment, but rather as a catharsis for the profession and a prophylactic for the public." 271 Md. at 549, 318 A.2d at 814. On the record before us, we cannot say that disbarment is required for either of these purposes. Sparrow has spent five years unable to practice in California and apparently over six years not practicing law at all. Disbarment now would, in all likelihood, prevent him from practicing in Maryland for another eight to ten years. That sort of cumulative sanc-

---

**9.** To qualify for a Maryland real estate broker's license, an applicant must, among other things, "be of good character and reputation." Maryland Code (1988 Supp.), Art. 56A, § 4–305(b).

tion begins to look punitive, rather than cathartic or prophylactic.

Nonetheless, Sparrow did commit serious crimes. Although no one now questions his remorse and his recognition of the seriousness of his conduct, we have before us no actual finding of rehabilitation. Indeed, one of the California hearing panel's findings, unchanged by the Review Department, was that Sparrow was not rehabilitated when he appeared before it in early 1984. Nor have we any fact-findings on whether Sparrow has kept up with the law so that he is presently professionally competent. Under these circumstances, we think an indefinite suspension is appropriate, with leave to apply for reinstatement at the expiration of one year from the date of this order. Reinstatement is dependent upon Sparrow demonstrating to our satisfaction his rehabilitation, his present competence to practice law in Maryland, and that he has paid in full the costs of this proceeding.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COURT COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST VICTOR H. SPARROW, III.

McAULIFFE, Judge, dissenting.

I respectfully dissent. The appropriate sanction in this case is disbarment. Because the respondent should not be prejudiced by the delay in the initiation of disciplinary proceedings in this State, for purposes of any subsequent petition for reinstatement I would treat the disbarment as if it had occurred at the time the disciplinary sanction was imposed in California.

MURPHY, C.J., and RODOWSKY, J., join in this opinion.