## In re Anonymous No. 15 D.B. 81

Disciplinary Board Docket no. 322.

To the Honorable Chief Justice and Justices of The Supreme Court of Pennsylvania:

PEARLSTINE, *Member,* December 14, 1981 — Pursuant to 208(d), The Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## STATEMENT OF THE CHARGES

### Charge I

On February 27, 1979, respondent was retained by [A] to secure a final decree in divorce. At that time she paid respondent, the requested fee of $375 in full. In January of 1980, [A] retained the law firm of [B] to assume representation of her divorce case. Respondent was duly notified of this action. [C] an attorney in the law firm of [B], advised respondent that check of the divorce dockets determined that a complaint was not filed in behalf of [A]. [C] requested that respondent contact her promptly to discuss the return of the legal fee paid by [A].

Respondent did not reply to the letter of demand, although on May 9, 1980, respondent orally advised [C] that he would immediately forward her a check refunding the fee paid to him. On June 18, 1980, [C] made a further demand upon respondent for the refund of the sum of $375. Because of the failure of respondent to reply to this letter, [C] filed suit in the Municipal Court in July of 1980, to recover the fee. Respondent did not enter any defense and a default judgment was entered on September 10, 1980.

The complainant was unable to locate respondent who moved out of his office in September or October of 1979 and she was required to pay additional legal fees of $300 to the firm of [B] to proceed with her divorce which she finally obtained in June of 1980.

The sheriff in attempting to execute upon the judgment could not locate respondent and as of the date of the hearing complainant had not received repayment of the sum of$ 375 paid to him.

[C] spoke to respondent on the telephone with respect to obtaining the return of the fee and he promised to send her a check, but did not do so.

Respondent admitted that he knew of the judgment against him in excess of $375 including costs, that he had not paid it and that he intended to make payment when he could. He suggested to the hearing committee that he would like to have a voluntary or involuntary leave from the practice of law for at least two (2) years, stating:

"Question: Would you anticipate at sometime though to engage in the practice of law if the matter was behind you?

Answer: In the event that I am cleared or these matters are finally cleared up. Essentially what I would like to do is take a voluntary or involuntary leave from the Bar for at least two years. I simply

wouldn't want to foreclose the possibility of the future."

Accordingly, the petition charged respondent with having violated the following Disciplinary Rules of the Code of Professional Responsibility:

(a) D.R. 2-106(A): Which prohibits an attorney from entering into an agreement for, charging or collecting an illegal or clearly excessive fee;

(b) D.R. 2-110(A)(3): Which directs an attorney who withdraws from employment to promptly refund any legal fee paid in advance and not earned;

(c) D.R. 6-101(A)(3): Which prohibits an attorney from neglecting a legal matter;

(d) D.R. 7-101(A)(1): Which prohibits an attorney from intentionally failing to seek the lawful objectives of a client through reasonably available means;

(e) D.R. 7-101(A)(2): Which prohibits an attorney from intentionally failing to carry out a contract of employment entered into with a client for professional services;

(f) D.R. 7-101(A)(3): Which prohibits an attorney from intentionally prejudicing or damaging his client during the course of the professional relationship; and

(g) D.R. 9-102(B)(4): Which directs an attorney to promptly pay or deliver to a client, as requested by the client, the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive.

## Charge II

Respondent represented [D] and [E], Esq. represented [D's wife] with respect to a divorce action and a separation agreement sometime in 1976. An agreement was entered into providing inter alia

that the sum of $2,000 would be put into an interest bearing escrow account in the names of Messrs. [E] and respondent, which monies would be paid to [D's wife] upon entry of a final decree in divorce.

[D's wife] subsequently discharged [E] and retained [F], Esq., to represent her with respect to the domestic relations matter; however, respondent and [E] remained the co-escrow agents for the $2,000 deposit.

On December 14, 1979, [D's wife] was awarded a divorce decree. By certified letter dated January 21, 1980, [F] sent respondent and [E] a copy of the final decree and made a formal demand for the payment of the $2,000 plus interest. By letter dated March 19, 1980, [F] again wrote to respondent and [E] requesting release of the $2,000 plus interest, together with the closed bankbook. Although [E] had agreed to execute the necessary documents to release the escrow funds on deposit at Girard Bank, [D's wife] was unable to do so because respondent had possession of the bankbook and withdrawal forms.

In or about March of 1980, [F] filed an equity action against respondent and [E] on [D's wife's] behalf to secure release of the escrow funds. No responsive pleading having been filed by respondent, a default judgment was entered against him and remains outstanding as of the date of the filing of the petition in this proceeding.

Finally on June 3, 1981, Girard Trust Bank pursuant to the court's order released the escrow funds to [D's wife] and [F], her attorney.

Respondent appearing at the continued hearing on August 19, 1981 admitted that the allegations in both instances of the [A] and the [D] matter were correct and he did not file the divorce papers. In the [D]matter, he admitted that he was the escrow

agent and was aware of the request for the turnover of the escrow funds which were intact, but he never complied with the demands. He stated that he was no longer practicing law, that he was an inactive practitioner and has no law office.

It was alleged that respondent violated D.R. 1-102(A)(6) which prohibits an attorney from engaging in any other conduct that adversely reflects on his fitness to practice law.

## HEARING COMMITTEE RECOMMENDATIONS AND REASONS

The hearing committee recommended that [Respondent] be suspended from the practice of law for a period of two years. The hearing committee noted that respondent has been the subject of a prior disciplinary matter in Docket 34 D.B. 80 involving similar conduct nor was it persuaded that either his financial or personal problems explained or justified the neglect of his duties to the parties involved.

## FINDINGS OF FACT

The board adopts the findings of fact consisting of 32 paragraphs on the first five pages of the report of the hearing committee, precis of which has been set forth in the statement of charges, supra.

## CONCLUSIONS OF LAW

We find respondent violated the following Disciplinary Rules of the Code of Professional Responsibility:

(a) D.R. 2-110(A)(3): Which directs an attorney who withdraws from employment to promptly refund any legal fee paid in advance and not earned;

(b) D.R. 6-101(A)(3): Which prohibits an attorney from neglecting a legal matter;

(c) D.R. 7-101(A)(1): Which prohibits an attorney from intentionally failing to seek the lawful objectives of a client through reasonably available means;

(d) D.R. 7-101(A)(2): Which prohibits an attorney from intentionally failing to carry out a contract of employment entered into with a client for professional services;

(e) D.R. 7-101(A)(3): Which prohibits an attorney from intentionally prejudicing or damaging his client during the course of the professional relationship; and

(f) D.R. 1-102(A)(6): Which prohibits an attorney from engaging in any other conduct that adversely reflects on his fitness to practice law.

The foregoing conclusions of law were determined by the hearing committee. However, the hearing committee found that respondent did not violate D.R. 9-102(B)(4): which directs an attorney to promptly pay or deliver to a client as requested by the client, the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive. The board in reviewing the testimony and the fact that complainant was required to engage counsel and file an equity action and obtain a judgment against respondent in March of 1980, which did not culminate in the payment of the fund until June 3, 1981, solely because of the failure of respondent to turn over the bankbook, file the withdrawal forms and sign the appropriate documents for Girard Bank to pay the monies in accordance with the decree of the court, despite the willingness to cooperate of the other escrow holder.

Clearly this course of conduct is a violation of this rule.

## DISCUSSION

The writer of this opinion did on October 9, 1981, on behalf of The Disciplinary Board, prepare a report and recommendation on a previous charge to no. 34 D.B. 80, that respondent be subjected to public censure for violating D.R. 6.101(A)(3), which prohibits an attorney from neglecting a legal matter entrusted to him and D.R. 1.102(A)(4) which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation and Rule 203(b)(2) PA.R.D.E., which provides that a willful failure to appear for an informal admonition is grounds for discipline. At that time, it was stated in the report:

"This is a classic case associated with neglect. Respondent was unavailable by telephone, did not answer letters, falsely advised his client [ ] that the Master's Hearing had been scheduled and she would not have to attend as he knew the Master and that the divorce has been granted, when in fact no Complaint had ever been filed. This certainly is evidence of willful and intentional deceit involving dishonesty, fraud, deceit and misrepresentation in violation of Rule 1-102(A)(4)."

As stated in Bar Association of Baltimore City v. Siegel, 275 MD. 521, 528, 340 A. 2d 710 (1975); quoted in Attorney Grievance Commission of Maryland v. Kahn, 431 A. 2d 1336, 1351-52 (MD. 1981):

" . . . but because an attorney's character *must remain beyond reproach* this Court has the duty, since attorneys are its officers to insist upon the maintenance of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute. Disciplinary proceedings have been established for this purpose,

not for punishment, but rather as a catharsis for the profession and a prophylactic for the public."

This respondent exhibits a pattern of conduct which prejudices his clients and by the failure to act on their cases and by the passage of time until such failure becomes apparent. Respondent accepted a fee for services which he failed to perform and despite every effort on the part of the complainant to recover the money through separate legal action, failed to return the monies received.

The failure of respondent to appear before the hearing committee and when he did appear offered no excuses or facts to mitigate or justify the conduct, almost invites serious public discipline. Respondent has no present legal practice; he has no office; he remains financially unable to repay his obligations to his client and there is no basis upon which to conclude that respondent's conduct will be different in the future.

## PRIOR DISCIPLINE

Respondent received an informal admonition as a result of neglect, which was administered on December 13, 1978, by Chief Disciplinary Counsel Zerfoss, who found that respondent's conduct in the [G] Estate violated Rules 6-101(A)(3); 7-101(A)(1) and (2); 7-101(A)(3) of the Code of Professional Responsibility which involved neglect by respondent in failing to properly represent the administratrix of the estate.

## PENDING PROCEEDINGS

There is presently pending before the Supreme Court the Report of the Disciplinary Board dated October 9, 1981, Docket No. 34 D.B. 80, which treated with two charges of misconduct and which is awaiting determination by the Supreme Court.

That report was filed because Rule 208(d)(2) provides that the Disciplinary Board shall affirm or change the recommendation of the hearing committee by taking action within 60 days after adjudication of the matter at a meeting of the board and, therefore, it was proper that the report be filed forthwith. At that time the charges against this respondent docketed at 15 D.B. 81 were referred to a hearing committee and the hearing committee had not filed its report, which was actually filed on October 13, 1981, the report of the board having been forwarded to the Supreme Court on October 9, 1981.

## RECOMMENDATION

The board concludes that respondent presents one of the instances where the board's duty to protect the public from totally incompetent and irresponsible practitioners warrants the imposition of the harshest sanction and accordingly respectfully recommends to your honorable court that respondent, [   ] The report at Docket no. 34 D.B. 80 recommended public censure. [   ] be suspended from the practice of law for a period of four years.

## ORDER

O'BRIEN, *C.J.*, And now, this June 25, 1982, there having been entered by this court an order dated February 26, 1982, suspending [respondent] immediately and a rule issued upon him to show cause why he should not be disbarred, it is ordered that the rule be and is hereby made absolute, the said [respondent] is hereby disbarred from the Bar of this Commonwealth, and he shall comply with all the provisions of Rule 217 of the Pennsylvania Rules of Disciplinary Enforcement.