## In Re Anonymous No. 58 D.B. 82

Disciplinary Board Docket no. 58 D.B. 82.

McDONALD, *Member,* September 23, 1983 — Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF PROCEEDINGS

The within petition for discipline was filed on September 23, 1982 against [respondent], the within respondent (respondent) with respect to action in taking the Pennsylvania Bar examination on behalf of his wife, [A], by posing as [A] and using her assigned applicant number to take the examination in [ ] on July 28 and 29, 1981.

The petition for discipline alleged that respondent had violated the following Disciplinary Rules of the Code of Professional Responsibility:

A. D.R. 1-101(B), which requires that a lawyer shall not further the application for admission to the Bar of another person known by him to be unqualified in respect to character, education, or other relevant attribute;

B. D.R. 1-102(A)(3), which prohibits an attorney from engaging in illegal conduct involving moral turpitude;

C. D.R. 1-102(A)(4), which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation;

D. D.R. 1-102(A)(5), which prohibits an attorney from engaging in conduct that is prejudicial to the administration of justice;

E. D.R. 1-102(A)(6), which prohibits an attorney from engaging in other conduct which adversely reflects on fitness to practice law; and

F. D.R. 1-103(A), which requires an attorney possessing unprivileged knowledge of a violation of D.R. 1-102 to report said knowledge to a tribunal or other authority empowered to investigate or act upon such violation.

Hearing committee [ ] was assigned to hear these charges and, upon due notice to all parties, a hearing was conducted on January 27, 1983.

On July 5, 1983, hearing committee [ ] filed its report, in which it found respondent's conduct violated D.R. 1-102(A)(3), D.R. 1-102(A)(4), D.R. 1-102(A)(5), and D.R. 1-102(A)(6). The majority of the hearing committee found no violation of D.R. 1-101(B), which prohibits a lawyer from furthering the application of admission to the Bar of another person known by him to be unqualified in respect to character, education or other relevant attribute. The chairman of the hearing committee, however, dissented and found that D.R. 1-101(B) had been violated. With respect to D.R. 1-103(A), the hearing committee found that the failure of the respondent to disclose the violation of which he was aware was constitutionally protected and, therefore, a violation of D.R. 1-103(A) had not been established.

Based upon such violations, a majority of hearing committee [ ] recommended that respondent receive a three year suspension. The chairman, however, dissented and recommended that the respondent be disbarred.

No exceptions were filed to the findings or recommendation of hearing committee [ ] by either Petitioner, Office of the Disciplinary Counsel, or the respondent.

Accordingly, this board, after an independent consideration of this matter, adopted the following findings of fact.

## II. FINDINGS OF FACT

1. Respondent is an attorney admitted to the practice of law in the Commonwealth of Pennsylvania, having been admitted to the Pennsylvania Bar on or about May 6, 1981. He has no record of discipline in Pennsylvania.

2. Respondent married [A] in August of 1980 and was married to her during the relevant events of these charges.

3. On July 29-30, 1980, [A] took the Pennsylvania Bar examination in Philadelphia and failed. On February 24-25, 1981 [A] took the Pennsylvania Bar examination in Philadelphia for the second time and once again failed. In early June, 1981, [A] applied to take the Pennsylvania Bar examination for the third time, this time in Pittsburgh, Pennsylvania. [A] paid an additional fee of $100 and was granted permission to take the July, 1981 Bar examination and was assigned applicant number 548.

4. Respondent and [A] traveled to Pittsburgh together and arrived there on Sunday night, July 26, 1981. Respondent testified that because of apparently serious emotional difficulties resulting from the death of a relative and his wife's inability to pass the Bar examination, [A] was in a very difficult emotional state and asked if respondent "could take" the Bar examination on her behalf. At some time on either July 26 or July 27, 1981, respondent agreed to do so knowing full well that it was a wrongful act in violation of the Code of Professional Responsibility and a fraud upon the admission procedures of the Supreme Court of Pennsylvania and the Board of

Law Examiners. Respondent also knew that he was jeopardizing his own professional career by taking the examination on behalf of [A].

5. On July 28 and 29, 1981, respondent used [A's] admission letter and applicant number and took the Pennsylvania Bar examination on her behalf, representing himself as applicant number 548. Respondent placed [A's] assigned number 548 on each of the eight essay booklets on July 28, 1981. Respondent also placed [A's] assigned number as well as her birthdate on the multi-state Bar examination sheets on July 29, 1981.

6. Respondent achieved a very high score on the multi-state portion of the Bar examination which ranked him 36th out of approximately 1,800 persons taking the examination.

7. [A], apparently assured of passing the Bar examination through the efforts of respondent, filed a declaration of office address and domicile on August 15, 1981 and did not disclose the cheating on the Bar examination. [A] also denied cheating on the Bar examination during two meetings with investigators from the Pennsylvania Attorney General's office.

8. From the date of the examination in July of 1981 through the date of the hearing on July 27, 1983, respondent did not voluntarily disclose to the Pennsylvania Board of Law Examiners or the Pennsylvania Attorney General's office the fact that [A] did not take the examination and that respondent had taken it on her behalf. However, respondent did disclose his taking the examination on [A's] behalf on July 9, 1982 in response to questions from Disciplinary Counsel. He reiterated his admissions fully and openly on the record on January 27, 1983 at the hearing.

## III. CONCLUSIONS OF LAW

Respondent has violated D.R. 1-102(A)(3), D.R. 1-102(A)(4), D.R. 1-102(A)(5), and D.R. 1-102(A)(6) by willfully representing himself to be his wife and taking the Bar examination on her behalf. With respect to D.R. 1-101(B), which requires that a lawyer shall not further the application for admission to the Bar of another person known by him to be unqualified in respect to character, education or other relevant attributes, this board concludes, as did the chairman of the hearing committee in dissent, that respondent's conduct violated that rule. The fact that [A] would permit someone to take the Bar examination in her stead renders her unqualified in respect to character and respondent was aware of that deficiency. With respect to D.R. 1-103(A), a violation was not established.

## IV. DISCUSSION

This case presents a clear example of a willful and fraudulent attempt to have an unqualified person admitted to the Bar of the Supreme Court of Pennsylvania. In concluding that a three year suspension should be imposed rather than disbarment, the majority of the hearing committee relied upon the unique and difficult situation which imposed tremendous pressures on respondent causing him to take the unlawful action. A distinction has also been drawn between this case and those situations where an applicant performs dishonestly in order to procure his own admission to the Bar. Based upon the entire record, this board agrees that the three year suspension recommended by the hearing committee is appropriate.

Accordingly, the recommendation of hearing committee [      ] is accepted and adopted by this

board, which recommends the imposition of a three year suspension upon respondent.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania accepts the recommendation of hearing committee [     ] that respondent receive a suspension from the practice of law for a term of three years and hereby recommends such disposition to the Supreme Court of Pennsylvania. It is further recommended that all costs incurred in the investigation and prosecution are to be paid by respondent.

Mrs. Hammerman, Mrs. Neuman and Prof. Keck dissent and would recommend Disbarment.

Messrs. Daniels, Krawitz and Curran did not participate in the adjudication.

## DISSENTING REPORT AND RECOMMENDATION

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

KECK, *Member,* September 23, 1983—I dissent from the recommendation in the report of the majority of the Disciplinary Board in the matter captioned above, which report accepted the findings and recommendations of the majority of hearing committee [     ]. I concur with the findings and recommendation of the chairman of hearing committee [     ] and the opinion expressed by Chief Disciplinary Counsel, to wit: In addition to the Disciplinary Rules cited in the hearing committee report respondent violated D.R.1-101(B) for the reasons stated in the chairman's Concurring Opinion and respondent's conduct warrants disbarment for the reasons stated in the chairman's concurring opinion and the following reasons:

By taking the Pennsylvania bar examination and affixing his wife's identification number thereto respondent in effect committed an act of forgery, different from many acts of forgery in that respondent anticipated no direct personal gain, but clearly an act of moral turpitude nevertheless. Respondent has disgraced and degraded his profession, showing contempt for the standards of admission thereto. He has sacrificed his personal integrity to a misguided attempt to secure immediate gratification of his wife's ambitions. He has shown utter lack of mature judgment in failing to consider the possible long-term consequences of his act. He might better have been guided by the words of the poet, Richard Lovelace, who wrote over three-hundred years ago

"I could not love thee, dear, so much
Loved I not honour more."

Respondent is judged by hearing committee [    ] to have violated D.R. 1-102(A)(3), D.R. 1-102(A)(4), D.R. 1-102(A)(5), D.R. 1-102(A)(6) and further by the chairman of the hearing committee to have violated D.R. 1-101(B). A near parallel is the matter of Office of Disciplinary Counsel v. Alfonso A. Tumini No. 26 D.B. 81 which was concluded by disbarment.

In the matter of Tumini, respondent was judged to have violated the same D.R. 1-102(A)(3), D.R. 1-102(A)(4), D.R. 1-102(A)(5) and D.R. 1-102(A)(6) and in addition D.R. 7-102(A)(3) and D.R. 7-102(A)(8) for having conspired to make and having knowingly made false statements under oath to a United States grand jury, and for having knowingly delivered a cash bribe to a public official and knowingly participated in schemes intended to assist a public official in receiving illegal payment of funds. Respondent was judged also to have violated D.R. 103(A) for failure to report unprivileged knowledge of violations of D.R. 1-102.

Respondent pleaded that he ":was faced with a cruel dilemma. Either he had to commit perjury in violation of the law and the Code of Professional Responsibility or he would have to completely destroy, both professionally and socially, the only two benefactors he had ever had."

"In the end, after much anguish, his loyalty prevailed over his integrity and he consequently conducted himself as above admitted."

Although respondent was young and recently admitted to the bar and had no prior record of discipline the Disciplinary Board stated "Respondent's choice of loyalty over integrity must result in a recommendation of disbarment. The board unanimously concurred in this recommendation."

In support of that recommendation the report of the board cited the case of In re: Leopold, 460 Pa. 384, 366 A.2d 227, 232 (1976), in which the court stated:

"We are obligated to acknowledge that one of the purposes for attorney disciplinary procedures is to maintain the public confidence in the legal profession and our judicial system. We believe that adherence to a lenient disciplinary process in light of the oath each attorney takes as an officer of the court and the high ethical standards the profession subscribes to would be contrary to the acknowledged goals of protecting the public, the profession and the court from those individuals not fit to be members of the bar. See Moyerman's Case, 312 Pa. 555, 167 A. 579 (1933)," and the case of Bar Association of Baltimore City v. Siegel, 275 MD 521, 340 A.2d 710 (1975); quoted in Attorney Grievance of Maryland v. Kahn, 431 A.2d 1336, 1351-52 (MD 1981).

". . . but because an attorney's character *must remain above reproach* this Court has the duty, since attorneys are its officers, to insist upon the mainte-

nance of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute. Disciplinary proceedings have been established for this purpose, not for punishment, but rather as a catharsis for the profession and a prophylactic for the public."

The court also stated in Office of Disciplinary Counsel v. John T. Grigsby, III, 493 Pa., 194, 425 A.2d 730 (1981):

"The purpose of the Code of professional Responsibility and the Rules of Disciplinary Enforcement is to protect the public, the profession and the courts. Whenever an attorney is dishonest, that purpose is served by disbarment."

These quotations are equally applicable to the case at hand. Although respondent had been a member of the bar only about one year at the time of his transgression and although he has no record of prior discipline, his behavior in the matter at hand is so egregious as to bring disrepute to his profession and his judgment is so poor and lacking in foresight as to call into question his ability to serve the public properly; therefore I recommend that respondent be disbarred.

Mrs. Hammerman, Mrs. Neuman join in the dissent.

## ORDER

ROBERTS, *C.J.*, And now, this December 19, 1983, this court having issued a rule on [Respondent] to show cause why an order of disbarment should not be entered, upon consideration of the record and briefs filed in response to the rule, it is ordered that the rule be and is made absolute, that [Respondent] is disbarred from the Bar of this Commonwealth, and that he shall comply with all the

provisions of Rule 217, Pa. R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa. R.D.E.

Mr. Chief Justice Roberts and Mr. Justice Larsen dissent and would accept the Disciplinary Board's recommendation of a three-year suspension.