## IN THE MATTER OF THE PETITION FOR THE DISBARMENT OF EARL J. LOMBARD

[No. 258, September Term, 1965.]

*Decided April 5, 1966.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*Marshall I. Stewart* for appellant.

*William Taft Feldman,* with whom was *Charles W. Woodward, Jr.,* on the brief, for Grievance Committee, Maryland State Bar Association, appellee.

HORNEY, J., delivered the opinion of the Court.

This is an appeal from the order of the Circuit Court for

Montgomery County disbarring Earl J. Lombard from practicing law in the State of Maryland. The order was entered after a full evidentiary hearing on the petition filed by the Grievance Committee of the Maryland State Bar Association with the approval of the Executive Council. The committee and the attorney are usually referred to herein as the petitioner and the respondent, respectively.

The petitioner specifically enumerated the charges against the respondent, but it would serve no useful purpose to set them forth in detail. Instead, it will suffice to say that the respondent was charged with professional misconduct and with conduct prejudicial to the administration of justice and to summarize the charges in a concise statement of the facts.

In March of 1960, the Orphans' Court of Montgomery County appointed the respondent as administrator *c.t.a.* of the estate of Henry Moorehead Underwood. Between September of 1960 and March of 1962, the respondent converted the assets of the estate, consisting of both real and personal property, into cash and deposited the proceeds in a bank account he maintained in his name as "attorney" where such funds were commingled with other funds belonging either to other clients or to himself and immediately began diverting such funds by unexplained withdrawals in amounts that were not and could not have been made on behalf of the estate. In all, a total of approximately $32,000 belonging to the estate was deposited in this account. And a check of $1,550.50, dated April 15, 1963, payable to the respondent as administrator and endorsed to the credit of himself as attorney was deposited in an unknown bank.

Prior to the first deposit of estate funds, the attorney account had been overdrawn several times. The last of these was made good by the transfer of the bank account of the decedent to the attorney account. At no time after the deposit in November of 1960 of $25,051, from the sale of the real property, did the balance in the attorney account amount to as much as $25,000. In September of 1961, after having deposited in the account estate funds aggregating more than $31,000, the account was overdrawn $61.83. Twice thereafter the account was overdrawn again. It was finally closed by the respondent in May of 1962.

Although most of the assets of the estate had been converted to cash within nine months after his appointment as administrator, the respondent failed to state an administration account within the time prescribed by law. And when the respondent disregarded the repeated efforts of the probate court to bring about the filing of an account, that court revoked the letters of administration. The revocation of letters was reversed in the *Matter of Estate of Underwood,* 233 Md. 394, 196 A. 2d 877 (1964), not because he had been efficient (for in fact he had been extremely lax) in attending to his duties as administrator, but because proper statutory notice that he was in default had not been given.

While no administration account has yet been filed, the respondent, on or about the time the charges against him were being formalized, exhibited a proposed draft (which was neither signed nor verified) of an administration account and distribution to specific legatees, however the chief deputy register of wills declined to accept it because many of the disbursements shown therein were not accompanied by vouchers and because the respondent had not charged himself with interest on the funds he had collected but had not promptly distributed in accordance with law. Within a month after the residuary legatees had filed exceptions to the proposed account, the respondent purchased nine cashier's checks totaling $20,000. Eight of them, each in the amount of $2,312.50, were in payment of the specific legacies of $2,500 each, less the collateral inheritance tax thereon of $187.50. The other check, in the amount of $1,500 payable to the register of wills, was in payment of the collateral inheritance tax on the specific legacies. The amount due the register of wills for administration costs and tax on commissions as well as the collateral inheritance tax on the residuary legacies is still unpaid.

The respondent, answering the petition, denied the alleged acts of misconduct, but he did not appear at the hearing on the petition for disbarment or offer any explanation of his conduct.

The lower court, basing its conclusion on the failure to set up a separate fiduciary account, on the commingling of estate funds with other funds in the attorney account, on the diver-

sion of estate funds by unexplained withdrawals for unspecified purposes and on the failure to file an acceptable administration account, found that the defendant had committed professional misconduct as well as conduct prejudicial to the administration of justice. Having so found, the court commented on the fact that the respondent had given no explanation for doing what he had done.

On appeal it is contended that the lower court erred: (i) in finding on the evidence presented that the respondent should be denied the right to continue practicing law; (ii) in receiving evidence offered by the petitioner; (iii) in excluding evidence offered by the respondent; and (iv) in considering the failure of the respondent to appear and explain his conduct.

## (i)

The uncontradicted evidence that the respondent had not only commingled the funds of the estate of which he was the administrator with other funds deposited in a bank account in his name as attorney but had made numerous unexplained diversions of estate funds for purposes other than those concerning the administration of the estate were, we think, sufficient for the lower court to find that the respondent, because of his professional misconduct, was unfit to continue the practice of law. The claim of the respondent that the evidence instead of showing diversions of estate funds showed only the status of the attorney account from time to time simply does not, to use an apt colloquialism, hold water.

There was also ample evidence—in the failure of the respondent to file at an earlier time an account of his administratorship and his utter disregard for the statutory requirement that a first account should be filed within twelve (now fifteen) months after the granting of letters of administration—to show that the conduct of the respondent was prejudicial to the administration of justice. In this regard, the argument of the respondent attacking the *bona fides* of this proceeding as an attempt to favor the residuary legatees and their attorney at the expense of the respondent is, as the record shows, wholly without merit.

We find nothing to excuse his failure to heed the admoni-

tion in Canon Eleven of the Professional Ethics that "[m]oney of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him." In *Rheb v. Bar Association of Baltimore City,* 186 Md. 200, 46 A. 2d 289 (1946), it was said, at p. 205, that "the duty rests upon the courts, and the profession as a whole, to uphold the highest standards of professional conduct and to protect the public from imposition by the unfit or unscrupulous practitioner." We not only reaffirm what was there said, but we think it is apparent that the bar and the court in the present case did what was required of them in conformity with law.

Whether or not the respondent should have been suspended for a period of time rather than be disbarred for all time was initially a matter for the lower court to decide. We see nothing in the record, however, to indicate that disbarment was not justified under the facts and circumstances of this case.

### (ii) and (iii)

The claims that the court erred in receiving evidence offered by the petitioner and in excluding evidence offered by the respondent not only lack substance but are for the most part frivolous.

The admission into evidence of the resolution of the bar association for the purpose of showing the authority under which it had acted could hardly be said to be prejudicial merely because the resolution referred to the conversion of $30,000 as the approximate aggregate of the diversions with which the respondent was to be charged. Exhibits of copies of the bank records kept in the regular course of business were clearly admissible under Code (1957), Art. 35, §59. And, since it was incumbent upon the petitioner to prove, if it could, the charges against the respondent, the exhibits of other documentary evidence, such as bank statements and checks deposited in and drawn against the attorney account, tending to show the wrongdoings of the respondent, were likewise clearly admissible.

The question as to whether or not copies of letters allegedly written by the respondent to the residuary legatees

should have been excluded is not before us. The exhibits were not identified or included in the record. Nor were the contents of the letters ever proffered as evidence. See *Fowler v. Benton*, 229 Md. 571, 185 A. 2d 344 (1962).

(iv)

Finally, there was no reason why the court could not take into consideration the fact that the respondent failed to appear and explain his conduct. The contention of the respondent that the court seems to have presumed him to be guilty until he established his innocence is not supported by the record. It was not until after the petitioner had offered uncontradicted evidence that the respondent had commingled estate funds with his own or those of other clients and thereafter diverted such funds to other than estate purposes that the court stated there had been no explanation as to why he had failed to settle the estate. Moreover, as was said in *Fellner v. Bar Association of Baltimore City*, 213 Md. 243, 131 A. 2d 729 (1957), at p. 247: "this is not a criminal proceeding, in which the defendant has a right to stand mute." Nor is it (as was also said in *Fellner* at p. 247) "without significance, as bearing upon his moral fitness" to practice law that the respondent refused, and still refuses, to acknowledge that what he did was improper.

*Order affirmed; appellant to pay the costs.*