483 A.2d 56

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Charles Berkeley ALER.**

**Misc. Docket (Subtitle BV) No. 11, Sept. Term, 1983.**

Court of Appeals of Maryland.

Nov. 1, 1984.

---

Melvin Hirshman, and Walter D. Murphy, Jr., Bar Counsel and Asst. Bar Counsel, Annapolis, for Attorney Grievance Commission of Maryland.

John Wendell Moyer, Towson, for respondent.

Argued before SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), specially assigned.

COUCH, Judge.

Once again, we are confronted with an attorney whose abuse of alcohol has led Bar Counsel to charge him with violation of the Disciplinary Rules. Acting pursuant to the provisions of Maryland Rule BV9, Bar Counsel filed a petition with this Court on behalf of the Attorney Grievance Commission seeking disciplinary action against Charles Berkeley Aler, a member of the Maryland Bar since 1963. The charges raised by the petition focus upon Mr. Aler's representation of a client, Rodney A. Roberts, who hired Aler on March 13, 1976 to represent him in a personal injury claim. Aler was successful in effecting a favorable settlement for Roberts. Roberts requested that Aler hold these funds in an escrow account, with payments to be made to Roberts as needed. It was alleged that, between April 13, 1976 and December 31, 1982, Aler "knowingly misappropriated and converted to his own personal use" these funds so entrusted to him. It was further alleged that Aler commingled Roberts' funds with his own funds and failed to maintain any accounting of the funds Roberts had entrusted to his care, and that the payments which Aler occasionally made to Roberts "were not always from the funds which Roberts had entrusted to his care." Instead, Aler's own funds or funds belonging to other clients were allegedly used.

■ Pursuant to Rule BV9 we referred the matter for hearing to a judge of the Circuit Court for Baltimore County. Judge Hennegan[1] heard live testimony and received certain stipulations of fact which were incorporated into the judge's findings of fact. The hearing judge found:

"1. On March 13, 1976, Rodney A. Roberts (hereinafter referred to as "Roberts") hired the Respondent to represent him as an attorney with respect to personal

---

[1]. Judge James H. Langrall was originally designated to sit as judge in those proceedings; Judge A. Owen Hennegan, Jr. was designated to sit in place of Judge Langrall when Judge Langrall was unable to participate.

injuries he sustained in an accident which occurred on November 1, 1975. In that accident, Roberts and his minor step-son, Dennis James Healy, Jr., were struck by a motorist while they were crossing a street in Baltimore City. Dennis James Healy, Jr. died on November 23, 1975, as a result of the injuries which he sustained in the said accident.

2. On April 22, 1976, the Respondent filed a law action on Roberts' behalf in the Circuit Court for Baltimore County, entitled *Rodney A. Roberts vs. Timothy J. Colclough and John James Colclough,* Law No. 93390. The accident of November 1, 1975, referred to above in paragraph 1 hereof, and the damages sustained by Roberts were the subject matters of the said law action.

3. The Respondent settled the case of Roberts vs. Colclough, referred to above in paragraph 2, with the Insurance Company of North America in December, 1978 for $19,500.00. The Respondent deposited the settlement check drawn by Insurance Company of North America in that amount to his escrow account at Maryland National Bank, account number 231–853–3 (hereinafter referred to as "escrow account") on December 14, 1978, with the agreement of Roberts and certain of Roberts' family members.

4. In the meantime, during the course of his representation of Roberts, the Respondent had received other funds belonging to Roberts.... The total amount of Roberts' money which was entrusted to the Respondent was $40,934.62.

5. The Respondent and Roberts and Roberts' family members agreed that the Respondent would hold the aforegoing sums in his escrow account in order to safeguard them, and they further agreed that upon Roberts' request, the Respondent would pay portions of the said funds to Roberts in the approximate amount of $100 to $250 per month in order to cover Roberts' monthly living expenses. However, there was no agreement between the Respondent and Roberts and/or Roberts' family mem-

bers as to exactly how long this arrangement was to continue.

6. During the period between May of 1976 and July of 1982, the Respondent made payments to Roberts at Roberts' request in accordance with the arrangement described above in paragraph 5 hereof. Some of these payments were made in the form of cash and others were made in the form of checks drawn on the escrow account and other accounts. . . .

7. Between December 14, 1978, the date on which the proceeds of the law action in the amount of $19,500 were deposited into the Respondent's escrow account, and March 30, 1979, the Respondent paid from the escrow a total of $1,222.03 either directly to Roberts or on his behalf, and drew checks totaling $15,085 to his own order. Some of the latter checks bore notations which indicated that they pertained to the Respondent's representation of Roberts. . . .

8. During the period between December 14, 1978 and March 30, 1979, the Respondent misused Roberts' funds from the escrow account for his own personal use and for office use, without knowledge or consent of Roberts or his family.

9. The Respondent, at various times, during his representation of Roberts between April, 1976 and July, 1982, commingled Roberts' funds with his own and misappropriated Roberts' funds to his own personal and/or office use.

10. The Respondent failed to maintain any accounting of Roberts' funds which had been entrusted to his care, as related above, and failed to account to Roberts or to anyone else for their whereabouts until the Respondent, with the assistance of counsel, produced most of the relevant bank records at the Inquiry Panel hearing on this matter on January 28, 1983. At the said hearing, the Respondent did provide an accounting as to how much money he had received on Roberts' behalf and how much money he had paid out either directly to Roberts or for

the use and benefit of Roberts during his representation of Roberts. Despite the said accounting, approximately $10,240.65 of Roberts' money, which had been entrusted to the Respondent, as related above, is still unaccounted for.

11. That at times the funds with which the Respondent made payments to or on behalf of Roberts were the Respondent's own funds or funds from other sources or funds belonging to clients other than Roberts.

12. The Respondent, between 1975 and 1982, also represented Roberts regarding a divorce, the defense of a motor tort action brought against Roberts (which Roberts won on summary judgment), the contesting of a guardianship proceeding brought by Roberts' estranged wife, a matter involving the attempted repossession of Roberts' car, and a matter involving Roberts' call to jury duty. The Respondent never billed Roberts or any of his family members for this representation of Roberts in these other matters, although he was entitled to legal fees for these services...."

The trial judge concluded that the Respondent violated the following provisions of the Code of Professional Responsibility:

"Disciplinary Rule 1–102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

Disciplinary Rule 2–110 Withdrawal from Employment.

(B) Mandatory withdrawal.

A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:

(3) His mental or physical condition renders it unreasonably difficult for him to carry out the employment effectively.

Disciplinary Rule 6–101 Failing to Act Competently.

(A) A lawyer shall not:

(3) Neglect a legal matter entrusted to him.

Disciplinary Rule 7–102 Representing a Client Within the Bounds of the Law.

(A) In his representation of a client, a lawyer shall not:

(8) Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule.

Disciplinary Rule 9–102 Preserving Identity of Funds and Property of a Client.

(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(B) A lawyer shall:

(1) Promptly notify a client of the receipt of his funds, securities, or other properties.

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

Further, the Court finds that the Respondent did violate Article 10, Section 44(a) of the Annotated Code of Maryland.

However, in finding that the Respondent violated Article 10, Section 44, the Court points out that no criminal

action has been brought against him nor has the Respondent been convicted of any crime in connection with the defalcation of the funds as set forth in the Findings of Fact or these Conclusions."

He also concluded in part:

"The Respondent was admitted to practice law in 1963 and undertook to maintain a private practice of law, mostly in Baltimore City and Baltimore County but not limited thereto. He engaged in fairly extensive activity in defense insurance work although he handled other types of practice and was generally respected as a competent trial attorney.

However, sometime in 1975, his work started to slip, his competence in handling matters began to wane. His work habit deteriorated from 1975 until a point in 1979 whereby he was practicing more from bars than from his office, and in fact, he had lost some substantial referral work which he had previously enjoyed. While the Respondent had drunk socially trying to build up a practice, his drinking became somewhat uncontrollable between 1975 to 1979 when he was completely unable with competence to manage either his legal, personal or financial affairs. In 1980 and in 1981, he developed a guilt psychosis due to his continued drinking habits which he refused to recognize as an illness despite two occasions (1970 and 1978) when he had been warned by physicians to materially alter his drinking. Not only did his drinking affect his ability to competently handle his legal matters but also materially affected both his marital and social life. The Respondent continued on a downhill course until August of 1982 when his bout with the bottle overcame him and caused severe internal physical bleeding that required hospitalization. During the course of his hospitalization and thereafter, he realized the seriousness of his physical and mental state and returned to see Mr. Richard Vincent, the Chief of the Division of the Special Action Committee of the Maryland State Bar Association which

is charged with the official duty of handling lawyers who use alcohol or drugs. The Respondent had refused the help of Mr. Vincent on one occasion but following the hospitalization, voluntarily returned to Mr. Vincent and with his assistance and the assistance of his wife, members of the bar and friends, has rehabilitated himself to the point that he has remained abstinent from the use of alcohol since August of 1982. He is active in AA programs, in particular, that program designed for lawyers suffering from the disease in the Towson, Maryland area. The Respondent has continued to practice law out of the offices of counsel who represented him in these proceedings. Members of the bar who testified have indicated that since his resolve to remain off of alcohol, that he has again become the competent attorney that he had previously been."

We agree with these conclusions, and we note there were no exceptions to the trial judge's findings of fact or conclusions of law. Accordingly, we adopt the factual findings and conclusions.

At oral argument, Respondent submitted a letter from Richard B. Vincent, Director of the Lawyer Counseling Committee of the Maryland State Bar Association. The letter states, in pertinent part:

"I am pleased to advise you that Mr. Aler is in total compliance with the recommendations of the Lawyer Counseling Committee and has been for almost two years. He has maintained total abstinence from alcohol and non-prescribed drugs and is enthusiastically involved in the recovery process of Alcoholics Anonymous.

Mr. Aler has been the Treasurer of the 'Lawyers Alcoholics Anonymous' meeting since its inception and his attendance at Alcoholics Anonymous meetings exceeds the recommendations. Regardless of the outcome of his hearing before the Court of Appeals, I believe the prognosis for his continued compliance is excellent."

We now reach the central issue in this case—that is, the proper sanction for this attorney's misconduct. Both the Attorney Grievance Commission and the Respondent have requested the same sanction this Court mandated in *Attorney Griev. Comm'n. v. Willemain,* 297 Md. 386, 466 A.2d 1271 (1983): indefinite suspension without prejudice to the Respondent's right to apply to this Court at any time for reinstatement subject to certain conditions.

In determining sanctions, we first note Mr. Aler's full cooperation with Bar Counsel in an effort to resolve the financial disorder of Mr. Roberts' account. We note Aler's stipulation as to the facts of Mr. Roberts' claim against him. We also note Mr. Aler's active participation in Alcoholics Anonymous and the comment of Mr. Vincent, Director of the Lawyer Counseling Committee, who stated at the hearing before Judge Hennegan that Mr. Aler is one of four out of 180 people who had become involved totally in recovery and was doing everything possible to make amends for the past.

■ When alcoholism is, to a substantial extent, the cause of the misconduct by an attorney, we view the misconduct in a somewhat different light. *Willemain, supra,* 297 Md. at 395, 466 A.2d at 1275; *Attorney Griev. Comm'n. v. Cooper,* 279 Md. 605, 612, 369 A.2d 1059, 1062 (1977). In this case, the record is clear that Mr. Aler is a reformed alcoholic.[2] Testimony adduces he has been abstinent for two years. At the same time, the mishandling of a client's °funds will not be lightly regarded by this Court. *Attorney Griev. Comm'n. v. Flynn,* 283 Md. 41, 45, 387 A.2d 775, 778 (1978). Therefore, even given his apparent recovery from

---

**2.** Respondent's proof of his disability distinguishes this case from *Attorney Griev. Comm'n. v. Nothstein,* 300 Md. 667, 480 A.2d 807 at 817 (1984), in which we affirmed the trial judge's finding that Respondent failed to prove by clear and convincing evidence that he was so mentally ill as to be unable to control his conduct.

the ravages of alcohol, there must be some protection of the public from his mismanagement of his client's funds. That protection will be the indefinite suspension of Mr. Aler from the practice of law in this state, effective thirty days from the filing of this opinion. We will entertain a motion by him to lift the remainder of that suspension after thirty days of that suspension has been served. Mr. Aler will, however, be subject to the conditions imposed in this opinion.

In the past, we have held when there has been a misappropriation of funds that we will permit reinstatement of the attorney only upon a showing of rehabilitation so complete that the misconduct will not be repeated. *Attorney Griev. Comm'n. v. Dunphy,* 297 Md. 377, 385, 467 A.2d 177, 181 (1983); *Attorney Griev. Comm'n. v. Flynn,* 283 Md. 41, 47, 387 A.2d 775, 778 (1978). More recently, we have delineated certain conditions which, if met by the attorney being sanctioned, avoid the imposition of indefinite suspension. *Attorney Griev. Comm'n. v. Truette,* 299 Md. 435, 474 A.2d 211 (1984); *Cf. Attorney Griev. Comm'n. v. Willemain,* 297 Md. 386, 466 A.2d 1271 (1983) and *Attorney Griev. Comm'n. v. Finlayson,* 293 Md. 156, 442 A.2d 565 (1982) (Alcohol abuse led to neglect of client's matters; reinstatement from indefinite suspension would be permitted upon a showing that certain conditions imposed by the Court were met).

In this case, the evidence presented by Mr. Aler, which included the testimony of fellow attorneys and proof of his abstinence from alcohol for almost two years, satisfies us that he is rehabilitated. We also note the trial judge's findings that no criminal charges have been filed against Aler.[3] *Cf. Dunphy, supra,* 297 Md. at 378, 467 A.2d at 177. Accordingly, we suspend the Respondent without prejudice

---

**3.** In addition, we note the trial judge's finding of fact Number 12, concerning the Respondent's representation of Roberts for matters other than the accident of November 1, 1975. It appears Aler never collected a fee for this representation.

to his right to apply to us following the thirty day suspension, subject to the following conditions:

1.   He shall participate in such activities as may be prescribed from time to time by the Director of the Lawyers' Counseling Program of the Maryland State Bar Association.

2.   He shall maintain active membership in and participation with Alcoholics Anonymous.

3.   He shall be associated with John W. Moyer, a member of the Bar of this Court, who shall monitor his activities as a practicing attorney, co-sign all trust and escrow checks drawn by the Respondent, and report promptly to Bar Counsel should the Respondent fail to act promptly on behalf of his clients.   Mr. Moyer's consent and an indication of his willingness to so act shall be appended to any Petition for Reinstatement.[4]

4.   He shall make restitution in the amount of $10,240.65 upon such terms and conditions as are agreeable to Bar Counsel and the Client Security Trust Fund, if it makes any payments to Mr. Roberts, prior to his reinstatement.   Additionally, he shall reimburse the Fund for any expenses it incurs in paying Mr. Roberts.

A breach of any one of the above conditions shall be grounds for renewal of Aler's indefinite suspension.

IT IS SO ORDERED;   RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COST OF TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST CHARLES BERKELEY ALER.

---

**4.** In the Respondent's Recommendation for Sanctions and at oral argument, Mr. Moyer was suggested to this Court as monitoring attorney; Mr. Moyer has assured the Court he is willing to assume this role.   If at some future time he is unwilling or unable to so act, another member of the Bar of this Court shall serve in his place.